186 September 18, 2014 No. 62

IN THE SUPREME COURT OF THE
STATE OF OREGON

MICHAEL W. JENKINS,
*Respondent on Review,*
*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Petitioner on Review.*

(CA A144545; SC S061812)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 24, 2014.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Anna M. Joyce, Solicitor General, and Ellen F. Rosenblum, Attorney General.

Lindsey K. Detweiler, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Peter Gartlan, Chief Defender.

BREWER, J.

The decision of the Court of Appeals is reversed. The final order of the Board of Parole and Post-Prison Supervision is affirmed.

_____

* On judicial review of a Final Order of the Board of Parole and Post-Prison Supervision dated November 24, 2009. 258 Or App 430, 309 P3d 1115 (2013).

**BREWER, J.**

This case involves the interpretation and application of two statutes, ORS 144.335(3)[1] and ORS 144.135,[2] to a final order of the Board of Parole and Post-Prison Supervision (the board) that postponed petitioner's release date from prison. The threshold question on review is whether, by amending ORS 144.335(3) in 1999,[3] the legislature intended to exempt the board from the "substantial reason" standard that this court had identified and applied in *Martin v. Board of Parole*, 327 Or 147, 957 P2d 1210 (1998). Under that standard, the board's orders must provide "some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached." *Id.* at 157. If the legislature did not intend to exempt the board from the "substantial reason" standard, the second question is whether the board's order in this case satisfied the substantial reason standard. The third question is whether the board's order complied with ORS 144.135, which requires the board to "state in writing the detailed bases of its decisions."

---

[1] ORS 144.335 provides, in part:

"(1) A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) The person has exhausted administrative review as provided by board rule.

"*****

"(3) The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it appears that the board acted within the scope of the board's authority. The Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

[2] ORS 144.135 provides:

"The board shall state in writing the detailed bases of its decisions under ORS 144.110 to 144.125."

[3] As explained in detail below, the 1999 amendment added the first sentence to the provision but did not otherwise alter its text. At the time of the amendment, the provision was numbered as ORS 144.335(5). Or Laws 1999, ch 618, § 1. It has since been renumbered as ORS 144.335(3). For the sake of simplicity, we follow the Court of Appeals' lead and characterize the amendment as one to ORS 144.335(3).

As explained below, we conclude that ORS 144.335(3) (1999) did not eliminate the substantial reason requirement that inheres in the substantial evidence standard of review to which the board's orders are subject. However, we further conclude that the board's final order in this case satisfied that requirement and satisfied ORS 144.135. Because the Court of Appeals reached a contrary conclusion with respect to the second and third questions, we reverse the decision of that court and affirm the board's final order postponing petitioner's release date.

## I.   THE FACTS

The relevant facts are procedural. In July 1980, petitioner was convicted of two counts of first-degree rape, and one count each of first-degree kidnapping and first-degree sodomy; he was sentenced to 20 years' imprisonment on each count, consecutive to each other and to previous sentences for attempted murder and first-degree robbery. On the same day, petitioner was convicted of third-degree robbery and sentenced to three years' imprisonment, consecutive to the other sentences. In 1990, petitioner was convicted of supplying contraband while he was incarcerated, and he was sentenced to 15 months in prison for that offense, consecutive to his previous sentences.

In September 2008, the board conducted an exit-interview hearing to determine whether petitioner was suitable for parole on his projected release date—March 2009—or whether his circumstances warranted a two-year postponement of that date. Before the hearing, the board obtained a psychological evaluation from Dr. Frank Colistro. In that evaluation, Dr. Colistro diagnosed petitioner as having a "severe" "Antisocial Personality Disorder" with a "very high degree of psychopathy." In Colistro's opinion, petitioner's personality disorder continued "to predispose [petitioner] to the commission of crimes to a degree rendering him an ongoing threat to the health and safety [of] the community." No other psychological evaluation was submitted to the board.

After the exit-interview hearing, the board issued a Board Action Form (BAF) that postponed petitioner's release

date for 24 months pursuant to ORS 144.125(3) (1977),[4] which authorized the board to postpone parole release dates for inmates who suffer from a present severe emotional disturbance (PSED). The BAF explained that, "[b]ased on the doctor's report and diagnosis, coupled with all the information that the board is considering, the board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community."

Petitioner sought administrative review of that decision; in response to that request, the board issued a more detailed administrative review response (ARR) that provided, in part:

"On September 24, 2008, the board conducted an exit interview with you. After considering all of the evidence presented at this hearing, including a psychological evaluation prepared by [Dr. Calistro], and applying the substantive standard in effect at the time you committed your crime as well as the applicable procedural rules, the board found that you were suffering from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community.

"* * * * *

"To the extent that you are alleging that the board lacks authority to defer your parole release date past the termination of your original prison term set, the board is unpersuaded by your arguments. The board acted under ORS 144.125(3) (1977) and OAR 254-50-015(3) (7/19/1978), postponing your projected release date on the basis of your severe emotional disturbance and dangerousness."

Ultimately, the board denied reconsideration in the ARR, and it advised petitioner at the conclusion of the ARR:

"YOU HAVE EXHAUSTED YOUR ADMINISTRATIVE REMEDIES. PURSUANT TO ORS 144.335, YOU MAY PETITION THE COURT OF APPEALS FOR JUDICIAL

---

[4] ORS 144.125(3) (1977)—which was the version of the statute in effect when petitioner committed his crimes—provided:

"If a psychiatric or psychological diagnosis of present severe emotional disturbance has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date."

REVIEW OF THIS ORDER, WITHIN 60 DAYS OF THE MAILING DATE OF THIS ORDER."

Petitioner sought judicial review in the Court of Appeals, asserting that the board's order did not provide "substantial reason" because the board failed to "explain its findings or the reasoning supporting its conclusion" in the order. The board responded that the order was legally sufficient for two reasons. First, the board argued that ORS 144.335(3) exempted the board's order from the substantial-reason requirement. Second, and alternatively, the board argued that the final order, including the board's administrative review response, contained substantial reason and was otherwise sufficient, because it "provided petitioner with a legal basis for deferring his parole release, as well as a factual foundation for its legal conclusion," by referring to and relying on Colistro's evaluation.

The Court of Appeals reversed. The court held that, notwithstanding the 1999 amendment to ORS 144.335(3), the "substantial reason" requirement continued to apply to the board's parole release postponement orders. *Jenkins v. Board of Parole*, 258 Or App 430, 443, 309 P3d 1115 (2013). The court further held that the board's order in this case lacked substantial reason, because it "offer[ed] a mere conclusion" and did not permit a reviewing court "'to determine if the board's findings, reasoning, and conclusions demonstrate that it acted in a rational, fair, and principled manner in deciding to defer petitioner's parole release.'" *Id.* at 444 (quoting *Gordon v. Board of Parole*, 343 Or 618, 634, 175 P3d 461 (2007)). The dissent would have affirmed. *Id.* at 444-52 (Armstrong, P. J., dissenting). After examining the statutory text, context, and legislature history of the 1999 amendment, the dissent concluded that "the legislature intended to relieve the board of the substantial-reason requirement otherwise implicit in the judicial-review provisions of ORS 183.482(8)." *Id.* at 452.

## II.   ANALYSIS

### A.   *ORS 144.335(3)*

The first issue presented on review is whether the 1999 amendment to ORS 144.335(3) exempted the board

from the substantial-reason requirement that this court identified in *Martin*. That issue presents a question of legislative intent to be resolved by applying this court's methodology for construing statutes. *See State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). According to the board, the statutory text, context, and legislative history demonstrate that ORS 144.335(3) (1999) was intended to relieve the board from the substantial-reason requirement and that, instead, that provision merely requires that it appear from an order that the board acted within the scope of its authority. Petitioner disagrees; he asserts that, after the 1999 amendment, board orders need not adhere to strict requirements of form; but, to allow for meaningful judicial review, an order must demonstrate on its face that the board acted within the scope of its authority by identifying the statutes and rules that it applied and "the specific evidence in the record that the board relied on to reach its conclusions." By "conclusions," petitioner appears to refer to the board's determinations with respect to each of the criteria—both factual and legal—that it is required to address in reaching a decision.[5] The board rejoins that, if its orders remain subject to the substantial-reason requirement, the order in this case satisfied that requirement because it identified the evidence on which the board relied, and that evidence supported its decision to postpone petitioner's parole release.

We begin with the text of the statute. ORS 144.335(5) (1997) provided:

"The Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482 (8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

As noted, the 1999 amendment did not alter any of that text. Instead, it added the italicized first sentence below:

"*The order of the board need not be in any special form, and the order is sufficient for purposes of judicial review if it*

_____

[5] Thus, petitioner asserts that the board's order here is deficient because it "fails to identify the specific evidence in the record that the board relied on to support its conclusions that the petitioner suffered from a present severe emotional disturbance (PSED) and that his PSED renders him a danger to the community."

> *appears that the board acted within the scope of the board's authority.* The Court of Appeals may affirm, reverse or remand the order on the same basis as provided in ORS 183.482 (8). The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper."

Or Laws 1999, ch 618, § 1 (emphasis added). That provision, now compiled as ORS 144.335(3), remains unchanged to this date.

As amended, the first clause of the first sentence of the statute provides that board orders "need not be in any special form." By its own terms, that clause applies only to the "form" of an order. Taken at face value, the clause indicates that board orders need not adhere to strict requirements of form, including those that may apply to the final orders of other agencies. Rather, it suggests, for instance, that the board may use standard order forms to efficiently manage its workload. However, the reasoning underlying and explanations for the board's decisions are not merely requirements of form. *Cf. Sunnyside Neighborhood v. Clackamas Co. Comm*, 280 Or 3, 21, 569 P2d 1063 (1977) (findings and reasoning requirements are "not simply imposing legalistic notions of proper form"). Accordingly, the addition of that clause does not necessarily suggest that the legislature meant to eliminate the substantial reason requirement.

The second clause of the first sentence of the statute provides that an order will be sufficient for "purposes of judicial review" if "it appears that the board acted within the scope of the board's authority." The parties have divergent views as to the meaning of that requirement. According to the board, it will "appear" that it "acted within the scope of [its] authority" when an order reflects that the board made a release-related determination that falls within the range of decisions that the board is statutorily entrusted to make. *See* ORS 144.110 *et seq.* (delineating board's authority to make release-related decisions). As the board sees things:

> "That is a different, and much less demanding, standard than substantial reason. The first sentence in ORS 144.335(3) is a compelling textual indication that the board is exempt

from the substantial-reason requirement that is implicit in the APA's judicial-review provisions of ORS 183.482(8)."

By contrast, petitioner opines that it "appears that the board acted within the scope of the board's authority" when the face of a board order shows that the board complied with the applicable statutes and rules governing the board action. It follows, petitioner posits, that, "to show that the board acted within the scope of its authority, the board must explain its decision by identifying the rules and statutes that the board applied and the specific evidence in the record that led the board to its conclusions."

Because the legislature has not expressly defined the words in the disputed phrase, dictionary definitions of the words "appears" and "authority" can be useful. *See State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) (when interpreting the words of a statute, this court will "resort to dictionary definitions" if there are no applicable statutory definitions). "Appears" is defined in part as "to come forth, be visible" and "to be obvious or evident." *Webster's Third New Int'l Dictionary* 103 (unabridged ed 2002). The pertinent definition of "authority" is "delegated power over others." *Webster's* at 146. Thus, an order will be sufficient for purposes of judicial review if it is evident that the board action is within the powers delegated to it by the legislature. The generality inherent in that requirement tends to support the board's interpretation that it refers to the statutory and regulatory authority that empowers the board to make a particular kind of decision. However, that interpretation would not necessarily relieve the board's orders from the substantial reason requirement. In fact, the context and legislative history of ORS 144.335(3) (1999) lead to a different conclusion.

ORS 183.482(8)—a provision of the Oregon Administrative Procedures Act (APA) that is referred to in the second sentence of ORS 144.335(3)—states:

"(a)  The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A)   Set aside or modify the order; or

"(B)   Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b)   The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be:

"(A)   Outside the range of discretion delegated to the agency by law;

"(B)   Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)   Otherwise in violation of a constitutional or statutory provision.

"(c)   The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

Under the APA, agency orders generally must "be accompanied by findings of fact and conclusions of law." ORS 183.470(2). The findings of fact "shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order." *Id*. This court has interpreted that provision to include an implied requirement that an agency's findings and conclusions be supported by "substantial reason." *Springfield Education Assn. v. School Dist*., 290 Or 217, 226-28, 621 P2d 547 (1980). That is, the agency must articulate a "rational connection between the facts and the legal conclusions it draws from them." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982). The substantial reason requirement exists "both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the statute." *Id*. If an agency order that is subject to ORS 183.470(2) does not contain such reasoning, then the appellate court will reverse and remand the order for the agency to correct the deficiency. *Id*. at 370. In other words, to the extent that the substantial reason requirement inheres in an agency's duty to make findings of fact and conclusions

of law, the substantial reason requirement concerns the reviewability of the agency's orders.

In *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271-72, 639 P2d 90 (1981), this court stated that a substantial reason requirement also is embedded within the substantial evidence standard of review under 183.482(8)(c):

> "On judicial review, the court will not substitute its judgment for that of the agency in drawing an inference, but the court must be satisfied that agency judgment has actually been exercised. Sometimes a rational nexus between an evidenced fact and an inference drawn from it is obvious from common experience (*e.g.*, we may infer from the fact of a wet street that it recently rained). In other cases, however, and particularly in cases involving expertise, the reasoning is not obvious (*e.g.*, we may infer from present meteorological conditions that it will snow tomorrow). In such an inference, we will not assume the existence of a rationale. Rather, we look to the order to state the rational basis of the agency's inference. The explanation need not be complex, but it should be sufficient to demonstrate the existence of a rational basis and to allow for judicial review."

(Footnote and citations omitted.)

If the board were subject to ORS 183.470(2), the resolution of this case might be less complicated. However, unlike most agencies, the board is exempt from the statutory requirement that orders contain factual findings and legal conclusions. ORS 183.315(1). Therefore, one of the rationales for the substantial reason requirements does not apply to the board's orders. But the substantial evidence standard of review under ORS 183.482(8)(c) (to which this court in *Roseburg City Firefighters* also related the substantial reason requirement) does apply to the board. ORS 144.335(3). Which brings us to *Martin*.

In that case, the board had acted under its statutory authority in ORS 144.102(3) to establish "such special conditions as it shall determine are necessary" because of the individual circumstances of the petitioner, a convicted sex offender. *Martin*, 327 Or at 150. The board imposed a condition that prohibited the petitioner from entering the county where the victim of his crime resided. The petitioner

sought administrative review, arguing that the condition was unreasonable. *Id*. In response, the board issued an ARR that slightly relaxed the prohibition, but concluded that:

> "'The board remains convinced that the state's interest in protecting the victim of your sodomy and sex abuse convictions outweighs your interest in carrying on your personal affairs in the prohibited areas.'"

*Id*. at 151-52 (capitalization omitted).

On review, the petitioner argued that the board's order, including the ARR, lacked substantial reason to support the challenged condition. The Court of Appeals agreed, and reversed. Before this court, the board argued that its exemption from the APA findings and conclusions requirement necessarily meant that it also was exempt from the substantial-reason requirement. This court rejected that argument, holding, instead, that ORS 183.482(8)(c) implicitly requires "substantial reason" to be evidenced in the board's orders to satisfy the requirement that the board's orders be based on substantial evidence in the record. According to the court, substantial reason requires an agency to provide "some kind of an explanation connecting the facts of the case (which would include the facts found, if any) and the result reached." 327 Or at 157. That, the court said, was "the appropriate *standard of judicial review* to be used." *Id*. at 158 (emphasis added).

In reaching that conclusion, the court relied on *Drew v. PSRB*, 322 Or 491, 909 P2d 1211 (1996), which involved another agency—the Psychiatric Security Review Board (PSRB)—that is exempt from the APA's requirement of factual findings and legal conclusions. In *Drew*, this court nonetheless held that PSRB orders were subject to the substantial reason requirement. 322 Or at 499-501. In *Martin*, the board argued for a different interpretation of *Drew*:

> "The Board argues in the alternative that when, as here, an agency is exempt from the requirements of ORS 183.470, the agency should not be required to set out the rationale for its order in the order itself but, instead, should be allowed to advance its supporting rationale in its brief on appeal. 'That appears to be what the court actually did in *Drew*

\*\*\*,' the Board asserts, 'although the language of *Drew* is to the contrary.'"

*Martin*, 327 Or at 158. This court disagreed:

"The Board misunderstands what happened in *Drew*. The challenge there was to the sufficiency of the evidence. The court on its own was able to determine that there was evidence in the record that would permit, although it did not require, the action that the PSRB had chosen to take. *Drew*, 322 Or at 499. *The problem, however, lies in the fact that the PSRB never had referred to that particular evidence, even obliquely, and the additional fact that certain of the evidence favoring the result reached by the agency would not have constituted substantial evidence. The court could not be sure which evidence had played the decisive role in the PSRB's decision. Without that knowledge, which a written explanation could have provided, the court could not affirm the agency's decision.*"

*Id*. (emphasis added).

The court in *Martin* nevertheless concluded that the evidence in that case satisfied the substantial reason standard of review. The court agreed with the petitioner that "the 'necessity' of special conditions must be determined in reference to the statutory objectives that are repeated throughout the statutes, namely, the protection of public safety and the reformation of the offender." *Id*. at 159. However, the petitioner argued for more:

"'Nothing in [the board's] statement[s] indicates anything about findings (indeed, no one knows what the Board believes respondent did to the victim, or what the victim would experience from an accidental meeting with the respondent); nothing is said about the state's or the victim's interests; there is no indication of the harm to the state or the victim of modifying special condition 10; and there is no attempt to weigh the supposed risk to the victim against the loss the condition imposes on the respondent. In sum, there is nothing upon which this Court can properly base its judicial review.'"

*Id*. at 159 (quoting the petitioner's brief on review). This court dispatched that challenge with little fanfare:

"None of those propositions is well taken. The facts that the Board necessarily found are reflected in the recitations

included within the evaluative portion of the Board's order. Moreover, we believe that, respondent's hyperbole to one side, no one reasonably could doubt that any encounter between respondent and his victim would be a psychological disaster for the victim. All the information available to the Board indicated that. The Board could not eliminate the possibility of an encounter entirely; the vagaries of human experience are not so easily controlled. But the Board was not required to set conditions so narrowly that they would permit a substantial danger that the two would meet. The Board's order specifically indicates that it weighed the different interests of the parties. Once it did so, we hold that its choice in this case lies well within the permissible range of choices that it could make."

*Id.* at 159-60.

Two significant aspects of this court's holding in *Martin* are pertinent here. First, the "evaluative" part of the board's decision to which the court referred was an ARR, not the original board action form; that is, the court adopted a broad understanding of the scope and contents of the board's final order for purposes of judicial review. Second, although the court referred to facts that the board "necessarily found," the board did not make specific findings of fact or conclusions of law in that case. Indeed, the court was satisfied with the board's explanation—without more detail—that it had "weighed the different interests of the parties" in imposing the challenged condition. In so concluding, the court did not apply the meaning of "substantial reason" for which petitioner advocates in this case and which, as discussed, would require the board to "identify the specific evidence in the record" that led to the board's determinations with respect to each of the criteria—factual and legal—that it was required to address in reaching a decision. To the contrary, this court has never imposed such a requirement in the absence of an agency duty to set out specific findings of fact and conclusions of law. *Cf.* ORS 183.470(2) (findings of fact "shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order").

Instead, this court's decisions have taken into account the circumstance that board orders under ORS 144.125 are not subject to the findings and conclusions

requirement of ORS 183.470(1). Thus, a final board order under that statute satisfies the substantial reason requirement if it provides "some kind of an explanation connecting the facts of the case (*which would include the facts found, if any*) and the result reached." *Martin*, 327 Or at 157 (emphasis added); *see also Weems v. Board of Parole*, 347 Or 586, 599-600, 227 P3d 671 (2010) (holding that substantial reason supported board's imposition of sex offender special conditions of post-prison supervision where board applied statutory criteria to facts of the case).[6]

As noted, the board's interpretation of ORS 144.335(3) (1999), by contrast, would discard the substantial reason requirement for orders under ORS 144.125, and replace it with a less stringent requirement that the order merely be of a kind that the board had the authority to make. The board's position is unpersuasive for several reasons. First, the legislature in 1999 did not amend the second sentence of ORS 144.335(3) to eliminate or modify the reference to the requirements of ORS 183.482(8), from which this court in *Martin* had derived the substantial reason requirement for board orders. To expressly exclude substantial reason from the substantial evidence requirement of ORS 183.482(8)(c) would have been an obviously preferable solution if that had been the legislature's intention. And, in fact, the original version of the bill took such a frontal approach.[7] In view of that fact, one would expect greater

---

[6] This court's decision in *Gordon v. Board of Parole*, 343 Or 618, 175 P3d 461 (2007) is not to the contrary. In that case, the court reviewed a board order under ORS 183.482(8)(b)(B) to determine whether the board had exercised its discretion in a manner "inconsistent with an agency rule, an official agency position, or a prior agency practice," and did not adequately explain the inconsistency. In concluding that the board had not adequately done so, the court stated that "[t]he standards of review set out in ORS 183.482(8) reflect a legislative policy, embodied in the APA, that decisions by administrative agencies be rational, principled, and fair, rather than *ad hoc* and arbitrary," and that it would review a final board order "to determine if the board's findings, reasoning, and conclusions demonstrate that it acted in a rational, fair, and principled manner in deciding to defer petitioner's parole release." *Id.* at 633-34. Nothing in *Gordon* suggests that, for purposes of substantial reason review under ORS 183.482(8)(c), the court believed that the board was required to identify specific evidence in the record that supported its ultimate determinations of fact and law.

[7] As discussed below, the original version of the bill would have exempted all agencies, not only the board, from the requirement to "explain how the agency's order is supported by the facts and evidence in the record."

clarity of expression in the enacted version of the bill if the board's view were correct.

Second, as noted, the substantial reason requirement is part of the substantial evidence *standard of review*. If the first sentence of ORS 14.335(3) were meant to prescribe the only requirement that must be satisfied to uphold an order on review, it is difficult to fathom why other standards of review set out in ORS 183.482(8) would continue to apply to board release decisions. That is, if no more than a statement of the board's authority for taking the type of action that it took were required to uphold the board's orders, why would the board's orders be subject to *any* standard of review under ORS 183.482(8), including the requirements that they be based on substantial evidence (subsection (8)(c)) and the proper exercise of discretion (subsection (8)(b))? That possibility makes little sense in light of the express wording of the second sentence of the statute. Instead, the second clause of the first sentence logically refers to what is required to issue an order that is reviewable under one or more standards of review. *See Don't Waste Oregon Committee v. Energy Facility*, 320 Or 132, 135 n 1, 881 P2d 119 (1994) (describing alleged agency errors as "reviewable pursuant to the standards of review for administrative actions set forth in [ORS 183.482]").[8]

The legislative history of the 1999 amendment to ORS 144.335(3) supports that view. In direct response to *Martin*, the Department of Justice (DOJ) initiated the introduction of a bill in the 1999 legislative session, SB 401, that would have amended ORS 183.482(8) to further exempt all agencies that are exempt from providing specific findings

---

[8] Although we separately discuss the parties' arguments concerning ORS 144.135 later in this opinion, we briefly mention it in our analysis of the context of ORS 144.335(3). ORS 144.135 was enacted in 1977 and has not been amended since then. That statute applies to three types of board orders, including orders entered pursuant to ORS 144.125, such as the order we review here. ORS 144.135 was never mentioned in the 1999 legislative hearings leading to the amendment of ORS 144.335, which, unlike ORS 144.135, applies to all final board orders. The requirements in both statutes facilitate judicial review and enhance the accountability of board decisions, but they differ somewhat in focus. As discussed below, ORS 144.135 requires the board to set out the detailed bases for particular types of decisions, whereas ORS 144.335 is more expressly concerned with judicial review of all categories of final board orders, including the reviewability of such orders and the standards for conducting review.

of fact and conclusions of law from having to "explain how the agency's order is supported by the facts and evidence in the record." In other words, under that proposal, the orders of several agencies—including the board—would no longer have been subject to the substantial reason requirement.

The Oregon Judicial Department (OJD) opposed the bill, taking the position in an initial hearing before a Senate committee that even agencies that are exempt from specific factfinding and legal conclusion requirements should not be "totally exempt from providing some kind of reasoned explanation in their orders when the order comes before a court for judicial review." Testimony, Senate Committee on Judiciary, SB 401, Feb 4, 1999, Ex C (statement of James W. Nass, Appellate Legal Counsel for the Oregon Judicial Department). A DOJ representative rejoined that the sheer volume of the board's workload, coupled with limitations in its resources, precluded the preparation of such orders in all release decision cases.

The disagreement continued as the bill moved to the House of Representatives. At a work session before the House Judiciary Committee, Mr. Nass testified in favor of an amendment to SB 401 that would have provided for a "second look" at board orders where an inmate had petitioned for judicial review. Under that approach, the board would not have been required to demonstrate substantial reason in its orders unless a petitioner sought administrative review, whereupon the board would be required—in an amended order—to comply with the substantial reason requirement. Tape Recording, House Judiciary Committee on Civil Law, SB 401, March 17, 1999, Tape 68 side B (statement of James W. Nass). In response, a DOJ representative objected that the proposed amendment would lead to a "two-tier" review system, where board orders subject to petitions for judicial review would be written differently than those in proceedings that are not likely to be the subject of judicial review. *Id.* (statement of Solicitor General Michael Reynolds). Representative Uherblau then expressed concern about SB 401 in its initial form, because, as she put it, there had to be "some accountability" on the part of the board, and a "bare order" would not adequately explain the board's reasoning

for the benefit of both the inmate and a reviewing court. Representative Uherblau said that she preferred to require an explanation that "doesn't have to be complicated," as long as it "put [the board's] thought process down on paper." *Id.* (statement of Representative Uherblau).

Board Chair Diane Rea responded to Representative Uherblau's concern, stating that "we have what you're describing in place right now through our Administrative Review Responses." *Id.* According to Chair Rea, ARR's were intended to "give the factual and legal analysis for th[e] decision," for purposes of "defending ourselves" before the Court of Appeals. Rea told the committee that the board's orders "don't go to the Court of Appeals on a bare order, they go to the Court of Appeals with an order and Administrative Review Response which contains the board's thought process." *Id.* (statement of Board Chair Diane Rea).

When asked to respond to Rea's comments, Nass said that, in his opinion, some ARR's were thorough, but others were not and, in any event, the board had elected to use ARR's because of this court's decisions in *Martin* and *Drew*, and, if those decisions were superseded, it could decide to stop doing so. *Id.* (statement of James W. Nass). Representative Williams then asked Rea how *Martin* had affected the workload of the board; Rea replied that the board had been including detailed ARR's in its orders "in compliance with case law," and that, given the board's work load, SB 401 was primarily motivated by the Board's desire not to be subjected to the APA's findings of fact and conclusions of law requirements. *Id.* (statement of Board Chair Diane Rea). Solicitor General Reynolds also told the committee how DOJ had interpreted *Martin* in initiating SB 401. According to Reynolds, the key to understanding *Martin* was that, although the court had found the board to be subject to a "findings of fact and conclusions of law" requirement, it had nonetheless affirmed the Board's order in that case. *Id.* Reynolds urged that, because the board had continued to issue ARR's like the one in *Martin*, the legislature should permit the board to continue that practice and not subject it to any additional requirements. *Id.* (statement of Solicitor General Michael Reynolds).

During the next two months, the bill was further revised so that, as enacted, it added only what is now the first sentence of ORS 144.335(3). Unfortunately, little of the legislative history addresses the intended effect of that final version. At a hearing before the Subcommittee on Civil Law, a DOJ representative explained the impetus for the compromise—that is, the disagreement between DOJ and OJD about "the wisdom of the original proposal" in SB 401—but failed to shed light on the meaning of the added text. The DOJ representative explained to the subcommittee that, to resolve the disagreement, Oregon's Attorney General, the Chief Justice of the Supreme Court, and Justice Gillette, the author of *Martin*, had "worked out" the "alternative language" and that "everyone is satisfied with this now, although now it only applies to the parole board—not to the PSRB or anyone else that would have been covered by the first bill." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, SB 401, June 1, 1999, Tape 185, Side A (statement of Assistant Attorney General Christine Chute).

When the final version of the bill was before the House, Representative Bowman asked "whether or not this bill would limit the information that inmates would receive as they are talking to the parole board about what they need to do to be released." Tape Recording, House Floor, SB 401, June 11, 1999, Tape 113, Side B (statement of Representative Jo Ann Bowman). Representative Shetterly responded: "No, it does not limit the information that inmates are to receive. This bill deals only with the form of orders that would be transmitted from the case to the Court of Appeals for the purpose of judicial review." Tape Recording, House Floor, SB 401, June 11, 1999, Tape 113, Side B (statement of Representative Lane Shetterly).

The foregoing legislative history is not conclusive; in particular it fails to account for off-the-record discussions that led to the finally enacted version of the bill. However, despite that uncertainty, the discussions that transpired in the March 17 House Judiciary Committee hearing are illuminating. It is apparent from those discussions that DOJ and the board believed that (1) in practical effect, this court in *Martin* had judicially reinstated a findings and conclusions requirement for board release decision orders; (2) the

board was attempting to provide adequate explanations for its decisions in ARR's in keeping with the actual application of the substantial reason requirement in *Martin*; and (3) as long as it was clear that no specific findings or conclusions were required, the board did not object to continuing with the practice of providing an explanation of its decisions in ARR's that would be adequate for judicial review. As articulated by Representative Uherblau, that practice "doesn't have to be complicated," so long as it "puts [the Board's] thought process down on paper." And, finally, as stated by Representative Shetterly, the final version of the bill was concerned with the "form of orders," and not meant to "limit the information that inmates are to receive."

Viewed accordingly, the version of SB 401 that ultimately was enacted assumes a somewhat different shape than either party urges. On the one hand, the bill did not elevate the substantial reason standard to the level of a virtual findings requirement in the way that petitioner asserts. Rather, the amendment confirmed that the board is not required to make specific findings of fact or conclusions of law in its release postponement orders or to use any particular form of order, and that an order is sufficient for purposes of review—that is, it is *reviewable*—if it shows that the board made a decision of a kind that it was authorized to make. Thus, we agree with the board's proposed interpretation of the second clause of the first sentence of ORS 144.335(3) (1999). However, the legislature's failure to alter the remainder of ORS 144.335(3), together with the overall legislative history set out above, suggests that the legislature ultimately did not intend to modify the *standard* of review, that is, substantial reason—a standard that is implicit in ORS 183.482(8)(c), as that standard actually was applied in *Martin*. *See Martin*, 327 Or at 158 (stating that substantial reason "is the appropriate standard of review."). Accordingly, we conclude that the substantial reason standard continues to apply to the board's decisions to postpone a prisoner's scheduled release date under ORS 144.125.

1.    *The Scope of the Final Order*

Before we apply that standard to the board's order here, it is necessary to determine what documents constitute

the board's final order and, in particular, whether the ARR on which the board in part relies is included. The board's original decision denying petitioner's release was a BAF. OAR 255-005-0005(6) defines "BAF" as "a Board order after a decision called a 'Board Action Form.'" However, where administrative review is sought and granted, a BAF is not the exclusive embodiment of the board's final release post-ponement decision under ORS 144.125.

ORS 144.335(1) provides that a person may seek review of a board order if that order is a "final order," if the person is "adversely affected or aggrieved" by the final order, and if "the person has exhausted administrative review as provided by board rule." ORS 144.335(1)(a), (b). The board's administrative rule implementing ORS 144.335 provides:

"(1)  A Board order is final and effective the date it is signed, however it is not final for purposes of the time period within which to appeal to the Court of Appeals until the inmate/offender exhausts his or her administrative review remedies.

"(2)  An inmate/offender has exhausted his or her administrative remedies after complying with OAR 255-080-0005, and after the Board denies review, or grants review and either denies or grants relief. The Board shall notify the inmate/offender that exhaustion has occurred and the time for judicial appeal of appealable orders shall run from the mailing date of the notice."

OAR 255-080-0001. Another rule, OAR 255-080-0005, spec-ifies how, and when, requests for administrative review are to be filed. When, as here, the board grants a request for review, OAR 255-080-0012(5) requires the board to "send the inmate/offender written notice of the board decision and findings." As noted, above, in response to such a request, the board typically issues an ARR that often contains a more detailed explanation of the original decision that the board made. In the board's practice, the ARR, coupled with the initial order, constitute the final order for purposes of judi-cial review. That practice is consistent with the governing statutory scheme as explained in this court's prior decisions.

In *Dawson v. Board of Parole*, 346 Or 643, 649, 217 P3d 1055 (2009), this court observed that "ORS 144.335

does not explain what a 'final order' is for purposes of judicial review of a board decision." However, the court cited *Mastriano v. Board of Parole*, 342 Or 684, 696, 159 P3d 1151 (2007), for the proposition that, "when the board 'reexamines a prior order, even if it reaffirms the order in full,' that action results in an order that is 'final for purposes of judicial review.'" *Dawson*, 346 Or at 654. The court in *Dawson* adhered to its earlier holding in *Esperum v. Board of Parole*, 296 Or 789, 798, 681 P2d 1128 (1984), that, "when reconsideration of an earlier order is requested and granted, and the administrative action denies parole release date relief, such a denial of relief is subject to judicial review in the Court of Appeals," thus, in effect, holding that such an action is a "final order" under ORS 144.335(1). *See Dawson*, 346 Or at 655. That conclusion is consistent with this court's treatment of ARR's in other cases. *See Weems*, 347 Or at 600 (discussion of factors supporting board's decision contained in ARR); *Martin*, 327 Or at 151-52 (reasons meeting substantial reason requirement set out in ARR).

In short, petitioner was required to seek administrative review in order to exhaust his administrative remedies, and that review process culminated in an order—including the ARR—that was "final for purposes of judicial review." *Mastriano*, 342 Or at 696. Accordingly, we conclude that the ARR in this case is part of the final order for purpose of determining whether the board's decision is supported by substantial reason.

## 2.  *Application*

The ARR in this case addressed each of petitioner's challenges to the board's initial BAF. In particular, the ARR stated that the board had "consider[ed] all of the evidence presented at [the exit interview hearing] including [the] psychological evaluation prepared by Dr. Frank P. Colistro on June 30, 2008," and that the board had "acted under ORS 144.125(3) (1977) and OAR 254-50-015(3),[9] postponing

---

[9]  That rule, OAR 254-50-015(3) (7/19/1978), provided:

"If a psychiatric or psychological diagnosis of present severe emotional disturbance has been made with respect to the offender, a panel may order a postponement of the scheduled release until a specified later date or until the prisoner or institution presents evidence that the emotional disturbance is over or in remission."

your projected parole release date on the basis of your severe emotional distress and dangerousness." In the evaluative report that the board expressly identified as a basis for its decision, Colistro specifically opined—after setting out detailed clinical support for his conclusions[10]—that petitioner had an antisocial personality disorder with a "very high degree of psychopathy" and that "the condition is a severe one which continues to predispose [petitioner] to the commission of crimes to a degree rendering him an ongoing threat to the health and safety of the community, an individual not yet amenable to community-based treatment." In short, the board's statements in the ARR leave little doubt as to the facts on which it relied or the existence of a rational connection between those facts and its decision pursuant to the statute and rule under which it acted.[11]

Petitioner nevertheless asserts that, even considered together, the explanations of the board's decision set out in the BAF and ARR are too general to permit our review for substantial reason. That argument misconceives the nature of the substantial reason requirement. Instead, as discussed, that standard requires that a final board order under ORS 144.125 provide an explanation connecting the facts of the case and the result reached, and that there be no indication that, in making its decision, the board relied on evidence that did not qualify as substantial evidence. *Martin*, 327 Or at 157-58. Here, the board expressly anchored its decision to pertinent facts in the record, in particular, to Colistro's report. Moreover, unlike the circumstance with the agency order in *Drew*, nothing in the BAF or the ARR in this case indicates that the board relied on tainted or insufficient evidence; to the contrary, the evidence that the board specifically identified—Colistro's report—was substantial evidence supporting the board's decision, and petitioner does not contend otherwise. The fact that the board also indicated in the ARR that it had "consider[ed] all of the evidence" presented

_____

[10] Because petitioner does not assert that the contents of Colistro's clinical analysis do not constitute substantial evidence that is sufficient to support the board's decision, we do not recount the details of that analysis here.

[11] By setting out the statute and rule governing its decision, the board's final order also complied with the requirement of the first sentence of ORS 144.335(3) (1999) that "it appear that the board acted within the scope of the board's authority."

in the exit interview hearing record does not undercut that point.

Finally, petitioner points out that the board's decision to postpone his release was a discretionary one. *See* ORS 144.125 (stating that board may postpone release after determining that inmate suffers from PSED that makes him or her dangerous to the health or safety of the community). Therefore, petitioner asserts, to demonstrate substantial reason the order had to explain why the board decided to exercise its discretion to postpone release after making those determinations. The straightforward answer is that the board did adequately explain that aspect of its decision: It stated that it was postponing petitioner's release because his PSED rendered him dangerous if he were to be released into the community, and it further stated, in particular, that the board relied on Dr. Colistro's report in making that decision. Among other observations, Colistro opined that petitioner presented a high risk of reoffending because he had engaged in poor institutional conduct, his "level of psychopathy [is] notoriously change-resistant and recidivism-prone," and he was "not yet amenable to community-based treatment or supervision." No more was required to explain the board's discretionary call. In short, we conclude that the board's final order in this case was supported by substantial reason.

B.  *ORS 144.135*

Because petitioner challenges a board order postponing his release date following a psychological examination conducted by the board pursuant to ORS 144.125, in addition to the requirements of ORS 144.335(3), the order was subject to the requirement in ORS 144.135 that the board "state in writing the detailed bases of its decisions."[12] The parties disagree as to what constitutes "the detailed bases" that ORS 144.135 requires. The board argues that ORS 144.135 "requires only that the board identify the particular ground for a decision" and that the statute's requirement is met if "the order reflects the specific determination

_____

[12] Neither *Martin* nor *Drew* implicated or discussed ORS 144.135 because, in *Martin*, the challenged release conditions were not imposed pursuant to ORS 144.110 to 144.125, and, in *Drew*, the petitioner challenged an order of the PSRB, a body not subject to ORS 144.135.

that the board made." Petitioner replies that ORS 144.135 is not so easily satisfied and that an order postponing release must "state the particular reasons why the board concluded that a statutory bases for postponement existed and, when postponement is discretionary, state why the board decided to postpone release in a case." By "particular reasons," petitioner means that the board must describe "the particular evidence on which [it] relied" in arriving at its decision.

The term "detailed bases" is not legislatively defined, but, when it pertains to the grounds for a decision, a "basis" is a legal term which refers to "[t]he reason or point that something (as a legal claim or argument) relies on for validity." *Black's Law Dictionary* 772 (9th ed 2009); s*ee Datt v. Hill*, 347 Or 672, 676, 227 P3d 714 (2010) (describing legal meaning of "ground" as synonymous with "basis"). A "detail" is "a small and subordinate part." *Webster's* at 616. On the surface of things, that term could require—as petitioner suggests—the board's orders to describe particular evidence on which it relied in reaching a decision. However, once again, such a view is difficult to square with the board's exemption from the APA's findings of fact and conclusions of law requirement. ORS 183.315(1).[13] Alternatively, the disputed term could be understood to require the board to give specific reasons for its decisions stated in terms of the applicable criteria. In its previous decisions, this court has given a functional meaning to the term that is consistent with the latter view.

This court construed ORS 144.135 in *Anderson v. Board of Parole*, 303 Or 618, 740 P2d 760 (1987). In that case, the board had voted not to override a 60-month term of imprisonment that the sentencing court imposed on the petitioner. That board decision was governed by ORS 144.110, which provided:

"(1)  In any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes.

---

[13] The board's exemption from the requirements of ORS 183.470(2) dates back to 1971, when ORS 183.315(1) was first enacted. Or Laws 1971, ch 734, § 19. Significantly, that exemption was neither repealed nor modified when ORS 144.135 was enacted in 1977.

"(2)   Notwithstanding the provisions of ORS 144.120 and 144.178:

"(a)   The board shall not release a prisoner on parole who has been sentenced under subsection (1) of this section until the minimum term has been served, except upon affirmative vote of at least four members of the board."

The board's order, memorialized in a BAF, recited that three members had voted to override the 60-month sentence and two had voted to sustain it. *Id.* at 624.

On review, the petitioner asserted that the board had failed to comply with ORS 144.135 because the BAF had not set out in writing the "detailed bases" for the board's decision. This court noted that, although "ORS 144.110(2)(a) does not specifically require that each [board] member state his or her reasons for making the decision to override or not to override a minimum sentence[,] *** ORS 144.135 does include reference to ORS 144.110." Accordingly, the question before the court was "what statement of detailed bases must be made as to the minimum sentence decision?" *Id.*

The court began its analysis by construing ORS 144.110 and the board's rule implementing that statute, OAR 255-35-023.[14] The court stated:

"We interpret the rule to require the Board to state the facts and reasons for its actions only when four members of the Board find applicable one or more of the three categories listed under subsection (1). *** [T]he administrative procedure for minimum sentence review works like this: The Board takes a vote to override the minimum sentence.

---

[14]  That rule provided:

"(1) The Board shall not release a prisoner before a judicially imposed minimum prison term sentence has been served except when at least four members of the Board find that:

"(a) The court applied the guideline rules incorrectly; or

"(b) The Board has information not available to the court at the time of sentencing; or

"(c) The court's findings, though technically correct, lead to an inequitable result.

"(2) The Board shall state the facts and reasons for its actions and it shall then inform the sentencing court of its decisions and reasons. The Board shall then set an initial parole release date in accordance with rule 255-35-013."

If four votes are not garnered to override, the basis for the decision simply results from the lack of four affirmative votes on that issue. The vote and who made it constitute the basis for the decision not to override. The Board, or the subset voting not to override, need not 'come to a point' where they have agreed upon some set of findings of fact and conclusions of law; the absence of four affirmative votes alone determines the Board's decision regardless whether there is any agreement as to why the Board has refused to override. In such a case, the prisoner's parole date is set at the expiration of the mandatory minimum sentence *and the criteria, justification or 'detailed bases' for such Board action are simply that there are not enough votes to override*.

"\* \* \* \* \*

"As demonstrated by this case, there was no consensus by the Board members. After evaluating the entire record, two members elected not to override the minimum and three would have. We perceive no purpose to be served by requiring the Board members to state their individual reasons for not voting to override the minimum sentence imposed. Neither the statute nor the Board rules require such statements. In sum, the Board complied with ORS 144.135 by setting forth in writing the bases for its decision under ORS 144.110 to 144.125."

*Id.* at 625-26 (emphasis added).

Consistently with the approach that it took in *Anderson*, in *Hemmerich v. Board of Parole*, 303 Or 683, 685, 740 P2d 779 (1987), this court rejected the petitioner's argument that the board failed to comply with ORS 144.135, explaining that, "[a]s in *Anderson*[,] \* \* \* the Board fully complied with ORS 144.135 by setting forth 'in writing the detailed bases for its decision,' which included four aggravation factors as justifying its decision to exceed the matrix range by five months." Similarly, in *Baker v. Board of Parole*, 303 Or 656, 740 P2d 772 (1987), this court held that the board had complied with ORS 144.135 when it explained, in a BAF sustaining the petitioner's 30-months minimum sentence, that it was doing so "because of the nature of the offense." Relying on *Anderson*, this court held that "the board is not required to state further details for its decision." *Id.*

In sum, this court's previous decisions confirm that ORS 144.135 requires the board to set out the specific reasons for its decision stated in terms of the criteria that it is required by statute or rule to address. In a release postponement order under ORS 144.125, those criteria are that the prisoner must (1) have a present severe emotional disturbance (2) such as to constitute a danger to the health or safety of the community. However, ORS 144.135 does not further require the board to identify particular evidence supporting its decision with respect to each of those criteria.[15]

The board's final order in this case satisfied the statute. The ARR set out in writing (1) the statute and rule under which the board made its decision; (2) the criteria that the board was required to address under the statute and rule; and (3) the board's decision based on those criteria, including a reference to facts—the information in Colistro's evaluation of petitioner—on which the board relied. Nothing more was required to set out the detailed bases for the board's decision. Accordingly, the board's final order satisfied ORS 144.135.[16]

### III.   CONCLUSION

To summarize: We conclude that the board's order postponing petitioner's scheduled release date under ORS 144.125 was required, despite the 1999 amendment to ORS 144.335(3), to satisfy the substantial reason requirement

---

[15] The legislative history of ORS 144.135 does not meaningfully inform our interpretation of the disputed term. The statute was enacted in 1977, along with ORS 144.110, ORS 144.120, and ORS 144.125, as part of HB 2013 (1977), which overhauled the parole system in Oregon. The legislative history of HB 2013 includes only one reference to section 9 of the bill, which, as enacted, would become ORS 144.135. Legal counsel for the House Judiciary Committee, in summarizing the bill during a work session, explained that "section [9] is simply an accountability section." Minutes, House Committee on Judiciary, April 19, 1977, 16 (statement of Dennis Bromka).

[16] The order also satisfied the board's rules that implement ORS 144.125. In particular, OAR 255-060-0012(3) provides:

"After review of the psychiatric/psychological reports, and all other information or documents presented during the hearing the Board may defer parole release until a specified future date upon finding: The inmate has a present severe emotional disturbance, such as to constitute a danger to the health or safety of the community."

See also OAR 255-060-0013(1) (providing that an order postponing parole release shall set forth the facts and specific reasons for the decision).

that this court has held is implied in the substantial evidence standard of review to which the board's orders are subject under ORS 183.482(8)(c). However, we also conclude that the board's final order in this case, which included its ARR, satisfied that requirement because it provided an explanation connecting the facts of the case and the result reached, and there is no indication that, in making its decision, the board relied on evidence that did not qualify as substantial evidence. *Martin*, 327 Or at 157-58.

Finally, we conclude that the final order set out detailed bases for the board's decision in accordance with ORS 144.135, in that it set out the statute and rule under which the board made its decision; the criteria that the board was required to address under the statute and rule; and the board's decision based on those criteria, including a reference to facts on which the board relied. It follows that the Court of Appeals erred in reversing the board's order.

The decision of the Court of Appeals is reversed. The final order of the Board of Parole and Post-Prison Supervision is affirmed.