134 June 4, 2025 No. 506

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MICHAEL W. JENKINS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A182304

Submitted May 15, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for petitioner. Michael W. Jenkins filed the supplemental brief *pro se*.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (board) that denied petitioner release under ORS 144.397 after holding a juvenile hearing. Petitioner argues, in the main, that the board erred by relying on a psychological evaluation (2023 report) that petitioner contends was flawed. In addition, petitioner claims that the board erred by setting an exit interview hearing. We affirm.

In 1979 and 1980, when petitioner was 17 years old, he was convicted of several crimes and sentenced to several indeterminate consecutive 20-year sentences. At that time, a presentence investigation report was prepared that included a psychological investigation. That investigation noted that petitioner lacked empathy for his victims and did not seem willing to change. The report also diagnosed petitioner with "[a]ntisocial personality [disorder]."

In 2021, petitioner's sentence was commuted by Governor Kate Brown. The Governor's commutation granted petitioner the opportunity to petition the board for early release through a juvenile hearing in which he would have the opportunity to demonstrate maturity and rehabilitation. *See generally* ORS 144.397 (explaining juvenile hearing procedure). Petitioner's hearing was scheduled for April 2023 and a new forensic mental health evaluation (2023 report) was prepared. That 2023 report reviewed petitioner's records, including seven psychological evaluations from 2000-2012, petitioner's disciplinary records, and petitioner's presentence investigation reports. The report also administered several evaluations to determine petitioner's risk for violence and psychopathy, in light of petitioner's crimes of conviction.

Prior to his juvenile hearing, petitioner requested that the 2023 report be excluded for two reasons. First, petitioner argued that the 2023 report relied on flawed evidence and thus violated his due process right to a fair hearing. Specifically, petitioner challenged the report's reliance on the 1979 presentence investigation report that diagnosed petitioner with antisocial personality disorder when he

was 17 years old. Petitioner noted that the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed) (DSM-5) currently does not permit antisocial personality disorder diagnoses for individuals under 18. *Id.* at 659.

Petitioner also argued the report should be excluded because it treated age as an aggravating factor in violation of the juvenile hearing statute. *See* ORS 144.397(6) (noting that, at a juvenile hearing, "under no circumstances may the board consider the age of the person an aggravating factor"). In particular, petitioner noted that a psychopathy checklist that the report utilized contained age-specific factors, like "early behavioral problems" and "juvenile delinquency."

The board voted to allow the report, noting that the report's authors "independently reached their own findings" and did not rely on flawed information "to reach any conclusion." Petitioner was ultimately unsuccessful in his juvenile hearing and the board deferred his ability to petition for a subsequent juvenile hearing for three years. The board also indicated that petitioner was eligible for an exit interview in February 2028.

Petitioner requested administrative review of the board's decision. In his request, petitioner contested the board's admission of the 2023 report, but did not advance any specific arguments as to why the report should have been excluded. Petitioner also argued, in essence, that as a result of the Governor's commutation that granted him a juvenile hearing, he no longer was subject to the exit interview process, as the juvenile hearing superseded any other previous sentence he had. The board denied petitioner relief and this request for judicial review followed.

*First and Second Assignment of Error.* Petitioner first challenges the board's decision to admit the 2023 report. Petitioner argues that the 2023 report relies on an inaccurate historical diagnosis and treats age as an aggravating factor, and the board, in turn, violated both ORS 144.397 and petitioner's due process rights by considering the report. In response, the board argues that petitioner's challenge is unpreserved because it was not raised in his

administrative review request, and, in any event, the report did not rely on flawed evidence and is admissible.

We review the board's order for substantial evidence, ORS 144.335(1), (3); ORS 183.482(8), and substantial reason. *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8). In reviewing for substantial evidence, we defer to the board's reasonable inferences and do not reweigh the evidence. *Mendacino v. Board of Parole*, 287 Or App 822, 834, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018). Substantial reason, on the other hand, requires that the board "articulate a 'rational connection between the facts and the legal conclusions it draws from them.'" *Jenkins*, 356 Or at 195 (quoting *Springfield Education Assn. v. School Dist.*, 290 Or 217, 226-28, 621 P2d 547 (1980)).

Assuming without deciding that petitioner's argument is preserved, we reject it on the merits. That is because, contrary to petitioner's belief, the 2023 report did not rely on an inaccurate understanding of petitioner's diagnosis. Rather, the 2023 report evaluated, among other things, a presentence investigation that contained a diagnosis that was, in fact, accurate for the time it was made. *See Diagnostic and Statistical Manual* 43 (2nd ed 1968) (defining antisocial personality but not including limitation based on age). Although petitioner is correct that, under modern standards, persons under 18 cannot be diagnosed with antisocial personality disorder, petitioner was repeatedly diagnosed with antisocial personality disorder after turning 18, in seven subsequent psychological evaluations. In light of that record, and to the extent that the 2023 report's reference to the 1979 diagnosis as one of several of the report's sources could be construed as an inaccuracy, it is, at most, "a minor flaw in the information on which the evaluator relied," *Nevins v. Board of Parole*, 292 Or App 848, 853, 426 P3d 253 (2018), and not one that requires reversal.

Finally, petitioner renews his argument that the 2023 report impermissibly treats age as an aggravating factor, in violation of the juvenile hearing statutes. *See* ORS 144.397(6)

("Under no circumstances may the board consider the age of the person as an aggravating factor."); OAR 255-033-0030(4) (same). Petitioner argues that one of the evaluation tools, the Psychopathy Checklist (PCL-R), assigned points to age-related factors of "juvenile delinquency" and "early behavioral problems" which increased his overall score on the test. The board, in turn, relied on the 2023 report—and petitioner's high score on the PCL-R—to deny petitioner release.

Although that presents a closer issue, we ultimately agree with the board that the report (and the board, by relying on it), did not treat age as an aggravating factor. The board is required to consider a "mental health diagnosis" if it is "relevant to the specific person and offense." ORS 144.397(5)(f).[1] Mental health professionals may come to that diagnosis, as they did here, by a thorough examination of many factors, including some factors that may be age-related. It appears that the report simply recognizes that certain factors that appear in a person when they are young are part of the constellation of factors that may comprise an adult mental health diagnosis.[2]

*Third Assignment of Error.* Lastly, petitioner assigns error to the board setting an exit interview hearing. Petitioner argues that the exit-interview procedure no longer controls his release date because, under the terms of his commutation, ORS 144.397(7)(b) now governs his release date.

We disagree. The Governor's commutation granted petitioner (and those similarly situated to him) an *additional* avenue through which he can pursue release. *See Marteeny v. Brown*, 321 Or App 250, 291, 517 P3d 343, *rev den*, 370 Or 303 (2022) (explaining effect of commutation). The commutation cannot affect any other aspects of petitioner's sentence, including his previously scheduled exit interview.

Affirmed.

---

[1] Although psychopathy is not itself a mental health diagnosis, as it is not listed in the DSM-5, the 2023 report notes that it is a "constellation of traits and behaviors *** that results in social dysfunction," and is "consistent with a personality disorder." The report did diagnose petitioner with antisocial personality disorder.

[2] Our disposition obviates the need to address petitioner's due process argument, as it relies on petitioner's claim that board relied on the 2023 report.