NAKAMOTO, J.
**604 The issue in this mandamus proceeding is whether the limitation in OEC 504-1(4)(b)
*84 on the physician-patient privilege allows a defendant to discover plaintiff's communications with treating physicians regarding physical injuries for which she seeks damages. Plaintiff-relator Emily Hodges contends that the trial court erroneously ordered her to answer deposition questions about privileged communications and seeks a peremptory writ of mandamus ordering the trial court to vacate its order. Defendants-adverse parties contend that, because those communications were "made in the course of a physical examination performed under ORCP 44," OEC 504-1(4)(b), plaintiff has no physician-patient privilege to assert. We hold that the limitation in OEC 504-1(4)(b) applies only when the physical examination occurs under the authority provided in ORCP 44 and that, on this record, the limitation on the physician-patient privilege does not apply. Accordingly, we grant plaintiff's petition, and a peremptory writ of mandamus shall issue.
I. FACTS AND PROCEDURAL HISTORY
The facts are procedural and undisputed. Plaintiff alleges that she was injured when the apartment balcony on which she and others were standing collapsed.[1] Plaintiff alleges that she suffered injuries to her spine, feet, right leg and hip, and right shoulder. She seeks $325,000 in economic damages for past and future medical expenses and impaired earning capacity. She also seeks $1,000,000 in noneconomic damages.
Defendants-Oak Tree Realtors, Inc., trustees of a family trust, and several individuals-deposed plaintiff and sought information about plaintiff's discussions with her treating medical providers relating to her injuries. Plaintiff's lawyer instructed her not to answer those questions, asserting the physician-patient privilege and that her answers would disclose communications she had had with her treating doctor. The following is one such exchange:
**605 "Q: And how about your right hip, what injury did you sustain to your right hip?
"A: I broke it.
"* * * * *
"Q: Is there a bone that you believe you broke in your right hip?
"A: It was my femur.
"[Plaintiff's Counsel]: I'm sorry, are you testifying based upon what your doctor told you?
"[Plaintiff ]: Yes.
"[Plaintiff's Counsel]: Okay. She's not entitled to ask you those questions, they're improper, they're in violation of the privilege; I'm instructing you not to answer them."
Following the deposition, defendants moved for an order compelling plaintiff to provide answers to defendants' questions regarding her discussions with treating doctors, contending that plaintiff's communications with them were not protected by the physician-patient privilege. Accepting defendants' argument that the communications fell within the exception in OEC 504-1(4)(b), the trial court ordered plaintiff to "testify regarding communications with her treating doctor, including statements she made and statements her doctor(s) made during examinations relating to injuries for which recovery is sought."
Plaintiff then petitioned this court for a peremptory writ of mandamus, seeking to have the trial court's order vacated. We allowed the petition and issued an alternative writ to the trial court, which declined to alter its ruling. The parties have briefed and argued the matter, and the court has received amicus briefs from Oregon Trial Lawyers Association and Oregon Association of Defense Counsel (OADC).
II. ANALYSIS
A. The Parties' Arguments
The physician-patient privilege that plaintiff asserts is contained in OEC 504-1(2), which provides that a patient in a civil case "has a privilege to refuse to disclose and to **606 prevent any other person from disclosing confidential communications * * * made for *85 the purposes of diagnosis or treatment of the patient's physical condition[.]" Oregon's physician-patient privilege is a "creature of statute," Nielson v. Bryson , 257 Or. 179, 182, 477 P.2d 714 (1970) (footnote omitted), and dates back to Oregon's early days of statehood. See General Laws of Oregon, Civ. Code, ch. VIII, title III, § 702(4), p 325 (Deady 1845-1864).
The physician-patient privilege is subject to a "nonexclusive list of limits" on its scope. OEC 504-1(4). As relevant, OEC 504-1(4) provides:
"(a) If the judge orders an examination of the physical condition of the patient, communications made in the course thereof are not privileged under this section with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.
"(b) Except as provided in ORCP 44, there is no privilege under this section for communications made in the course of a physical examination performed under ORCP 44 ."
(Emphasis added.) Defendants contend that the emphasized limitation in OEC 504-1(4)(b) applies to communications between plaintiff and her treating physicians.
In defendants' view, the physician-patient privilege does not shield plaintiff's communications with her doctors from discovery, because every physical examination of plaintiff for the injuries for which she seeks damages constitutes "a physical examination performed under ORCP 44." Defendants note that ORCP 44 C required plaintiff to provide defendants with records of physical examinations relating to her injuries:
"In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought unless the claimant shows inability to comply."
**607 Defendants reason that any physical examination relating to plaintiff's injuries is "performed under ORCP 44" because plaintiff must disclose records of those examinations under ORCP 44 C. Thus, defendants conclude, plaintiff's communications with treating physicians during the course of those physical examinations are excepted from the physician-patient privilege under OEC 504-1(4)(b).[2]
Plaintiff, on the other hand, argues that defendants and the trial court have misunderstood the interplay between ORCP 44 and the limitation on the physician-patient privilege in OEC 504-1(4)(b). For an examination to be "performed under ORCP 44," plaintiff argues, ORCP 44 must have authorized the actual examination itself. She observes that ORCP 44 A provides a mechanism for a court to order a physical examination of a plaintiff in a personal injury action:
"When the mental or physical condition * * * of a party, or of an agent, employee, or person in the custody or under the legal control of a party * * *, is in controversy, the court may order the party to submit to a physical or mental examination by a physician or a mental examination by a psychologist * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."
(Emphasis added.) Plaintiff argues that the limitation on the privilege would apply to a court-ordered physical examination as described in ORCP 44 A, but she notes that none of the examinations that were the subject of defendants' questions were court-ordered. In plaintiff's view, defendants' receipt of records of her physical examinations in accordance with ORCP 44 C is irrelevant under OEC 504-1(4)(b). She urges us to direct the trial court to vacate its order compelling her to testify about her communications with her treating doctors.
*86 **608 Accordingly, the issue for our resolution is what constitutes "a physical examination performed under ORCP 44" within the meaning of OEC 504-1(4)(b). That is an issue of statutory construction, which we resolve by applying the principles set out in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). To discern the underlying statutory intent, we examine the text of the statute in context and consider legislative history as pertinent. State v. Walker , 356 Or. 4, 13, 333 P.3d 316 (2014).
B. The Limitation on the Physician-Patient Privilege in OEC 504-1(4)(b)
The operative words in the disputed phrase-"performed under"-are not statutorily defined, so we assume that the legislature intended to give them their ordinary meanings. State v. Dickerson , 356 Or. 822, 829, 345 P.3d 447 (2015) (citation omitted). Accordingly, we turn to the dictionary for possible meanings of the words. See Jenkins v. Board of Parole , 356 Or. 186, 194, 335 P.3d 828 (2014) (stating that, when the legislature has not defined statutory terms, dictionary definitions can be helpful in interpreting statutes).
Webster's Third New International Dictionary contains several definitions for the verb "perform," but only two seem relevant to its use in OEC 504-1(4)(b). The first defines "perform" as "to carry out or bring about : ACCOMPLISH, EXECUTE < [perform] a function> * * * < dissections were [perform]ed on monkeys * * *>." Webster's Third New Int'l Dictionary 1678 (unabridged ed. 2002). The second definition defines "perform" as "to carry out an action or pattern of behavior : fulfill a threat or promise : ACT, FUNCTION < not only promised but [perform]ed * * *> * * * < the car [perform]ed beautifully except on a short incline * * *>." Id. The common thread between both definitions is the notion that the infinitive "to perform" involves the execution of some act.
Likewise, Webster's contains numerous definitions for the word "under," but most are not relevant for our purposes. The first potentially applicable definition of "under" is "required by : in accordance with : bound by < [under] contract to deliver> * * * < rights [under] the law>." Id. at 2487. The next defines "under" as "within the grouping or **609 designation of < matters that come [under] this head> < classified [under] Diptera>." Id. Finally, a third definition for "under" is "in the section designated as < looked for it [under] Minerals> < listed [under] Occupations>." Id.
Returning to OEC 504-1(4)(b), the statutory phrase "performed under ORCP 44" modifies "a physical examination." Through their argument based on ORCP 44 C, defendants suggest that an examination "performed under" ORCP 44 is equivalent to an examination "referenced in" ORCP 44. As reflected by the last two dictionary definitions of "under" recited above, that word in isolation might mean "within the designation" or "in the section" of the rule. But we are construing the phrase "performed under." Defendants' reading does not account for, and seems at odds with, the ordinary meaning of the two words when they are used together. A physical examination that was performed under ORCP 44 appears to mean that it was carried out pursuant and according to the authority provided in ORCP 44. By its text, then, OEC 504-1(4)(b) suggests that only physical examinations that were performed pursuant to the authority in ORCP 44 -typically court-ordered examinations as provided for in ORCP 44 A-are subject to the limitation on the physician-patient privilege that OEC 504-1(4)(b) provides.[3]
We next turn to context. Although defendants bolster their reading of the text of OEC 504-1(4)(b) by asserting a contextual argument, we are not convinced that it is correct. Defendants contend that OEC 504-1(4)(b) cannot refer only to examinations that a court orders pursuant to ORCP 44 A, because OEC 504-1(4)(a) already provides an exception for court-ordered examinations.
*87 They note that paragraph (4)(a) limits the physician-patient privilege when "the judge orders an examination of the physical condition of the patient," in which case "communications made in the course thereof are not privileged * * * with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise." As defendants see it, the **610 legislature would not add a duplicative or redundant exclusion for court-ordered examinations authorized by ORCP 44 through enactment of paragraph (4)(b).
As a general rule, we avoid statutory interpretations that would render part of a statute redundant. Blachana, LLC v. Bureau of Labor and Industries , 354 Or. 676, 692, 318 P.3d 735 (2014). In this case, however, construing OEC 504-1(4)(b) as limiting the privilege for physical examinations performed according to the authority provided by ORCP 44 does not render OEC 504-1(4)(b) superfluous, considering that the limitation in OEC 504-1(4)(a) can be viewed as a general or catch-all provision that would rarely apply to civil cases.
The exception in OEC 504-1(4)(a) applies to a court-ordered physical examination of any person, so long as that person is a "patient" of the physician. As defined in OEC 504-1(1)(b), a "patient" is someone who "consults or is examined or interviewed by a physician." Thus, a "patient" need not be a party to civil litigation and feasibly could be anyone whose condition was relevant in a civil or criminal case. In civil cases, however, court-ordered physical examinations are regularly performed on a party or a person under a party's control under ORCP 44 A.[4] Thus, it is unsurprising to find a specific limitation in paragraph (4)(b) for court-ordered examinations under ORCP 44 A. Indeed, the enrolled version of House Bill (HB) 2030 (1981), which later became the Oregon Evidence Code, indicates that the legislature intended to specifically and separately address court-ordered examinations under ORCP 44 A. In that version of HB 2030, the exception now found in OEC 504-1(4)(b) was expressly titled as a specific exception: an "Exception for certain examinations." As a result, although the limitation for **611 any court-ordered examination of a "patient" in paragraph (4)(a) is more general and, therefore, broader than the limitation for physical examinations of a "party" or those under the control of a party to civil litigation ordered under ORCP 44, we view the exception stated in OEC 504-1(4)(b) as a point of specificity rather than as a redundancy.
Moreover, the context provided by OEC 504(4)(b) -the limitations on the psychotherapist-patient privilege in OEC 504 -decisively undercuts defendants' reading of the text. The structure and content of OEC 504 and OEC 504-1, which the legislature considered at the same time, are nearly identical.[5] Both rules were styled after proposed Rule 504 of the Federal Rules of Evidence, which was proposed by the United States Supreme Court but never enacted. Legislative Commentary to OEC 504, reprinted in Laird C. Kirkpatrick, Oregon Evidence § 504.02, 365-66 (6th ed. 2013); Legislative Commentary to OEC 504-1, reprinted in Kirkpatrick, Oregon Evidence § 504-1.02 at 376.
Importantly, however, since its enactment, OEC 504 has placed a limit on the psychotherapist-patient privilege that is not included in the physician-patient privilege: "There *88 is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient * * * [i]n any proceeding in which the patient relies upon the condition as an element of the patient's claim or defense[.]" OEC 504(4)(b)(A). That exception "applies whenever the mental or emotional condition of the patient is put in issue[,]" in both criminal and civil proceedings. Legislative Commentary to OEC 504, reprinted in Kirkpatrick, Oregon Evidence § 504.02 at 368.
That limitation on the psychotherapist-patient privilege in OEC 504(4) is precisely the sort of limitation that defendants seek to enforce in this case-an exclusion from the physician-patient privilege for proceedings in which **612 the patient claiming the privilege is putting the patient's physical condition at issue by seeking damages. But the fact that the limitation appears in OEC 504, and not in OEC 504-1, undermines defendants' argument concerning the limitations on the physician-patient privilege. The legislature understood the problem that defendants have pointed out and inserted a limitation in OEC 504(4) to alleviate the problem. If the legislature had intended to include such a limitation on the physician-patient privilege, then OEC 504-1(4)(b) likely would have contained an express limitation that is similar to the one in the parallel psychotherapist-patient privilege.
That context is persuasive evidence that the legislature did not intend to limit the physician-patient privilege in the manner that defendants urge. Therefore, the text and context of OEC 504-1(4)(b) signify that the legislature did not intend to categorically limit the physician-patient privilege for all physical examinations of plaintiffs who have put their physical condition at issue in the case.
Finally, legislative history supports our understanding of the text, viewed in context. The Legislative Commentary to OEC 504-1 indicates that the legislature deliberately enacted differences in the scope of the two privileges. The commentary explains that the legislature "retained the statutory distinction between communications relating to a physical condition and communications relating to a mental or emotional condition in light of the historical differences in the scope of the applicable privilege." Legislative Commentary to OEC 504-1, reprinted in Kirkpatrick, Oregon Evidence § 504-1.02 at 377.
Accordingly, we reject defendants' proffered reading of the phrase "physical examinations performed under ORCP 44" in OEC 504-1(4)(b). Although defendants had the ability under ORCP 44 C to obtain written records of the physical examinations of plaintiff that her treating physicians had performed, the physical examinations were not performed pursuant to the trial court's authority under ORCP 44 A. Plaintiff, therefore, could assert the physician-patient privilege for the communications between her and her physicians during those examinations.
**613 We also consider and reject an alternative argument that defendants and amicus OADC raise in this court. In their view, because the list of limitations to the physician-patient privilege included in OEC 504-1 is "nonexclusive," this court can determine as a matter of law that another limitation on the privilege applies. Defendants and OADC ask this court to limit the privilege for what they describe as the routine practice of a defendant deposing a plaintiff about her injuries, treatment, and communications with her providers related to injuries for which recovery is sought. Defendants argue that recognizing that limitation will pro-mote practicality, fairness, and the pretrial discovery of relevant information.
We decline defendants' invitation to create that limitation. The legislature included the limitation that defendants seek for the psychotherapist-patient privilege, for circumstances in which the patient's mental or emotional condition are at issue, but it did not include that limitation for the physician-patient privilege. Although defendants argue that a limitation on the scope of the physician-patient privilege would be more practical and could reduce litigation costs, those policy arguments would be better made to the legislature.
In conclusion, on this record, the trial court erred in relying on the exception in OEC 504-1(4)(b) to grant defendants' motion to compel plaintiff to disclose the communications with her treating physicians. Accordingly, *89 we issue a peremptory writ ordering the trial court to vacate its order, based on OEC 504-1(4)(b), directing plaintiff to disclose her oral discussions with her treating physicians.
A peremptory writ of mandamus shall issue.

Four other individuals filed personal injury actions arising out of the balcony collapse, and the trial court consolidated all five cases. This mandamus proceeding was brought only by plaintiff.

Defendants do not argue that plaintiff waived the physician-patient privilege during discovery by disclosing the medical records concerning her examinations by treating physicians, and we do not decide that issue.

We recognize that in some actions, the parties, without seeking a court order, agree that the party seeking recovery for an injury will undergo a physical examination and that reports of that examination and like examinations will be exchanged pursuant to ORCP 44 B.

We have not found a reported Oregon case recounting what appears to be the rare circumstance covered by the limitation in paragraph (4)(a) in civil cases, namely, a court-ordered examination of a nonparty. We note, however, that court-ordered examinations of nonparties have sometimes occurred in civil cases in other jurisdictions. See, e.g. , Spellman v. American Sec. Bank, N.A ., 579 A.2d 151 (D.C. 1990) (requiring nonparty wife of judgment creditor to undergo medical examination to determine whether her medical condition would prevent her from being deposed); Perry v. Commonwealth, ex rel. Kessinger , 652 S.W.2d 655, 659 (Ky. 1983) (discussing statute permitting the court to order blood test of mother and child in paternity proceedings, even if mother and child are not parties to the case).

The similarities between OEC 504 and OEC 504-1 are not coincidental. The Legislative Commentary to OEC 504-1 notes that OEC 504-1"closely parallels" OEC 504 and that the Advisory Committee on Evidence Law Revision had recommended that the two privileges be "merged into a single rule." Legislative Commentary to OEC 504-1, reprinted in Laird C. Kirkpatrick, Oregon Evidence § 504-1.02, 376-77 (6th ed. 2013).