Argued and submitted October 11, 2010, reversed and remanded May 25, 2011

CLACKAMAS COUNTY EMPLOYEES' ASSOCIATION,
*Petitioner,*

*v.*

CLACKAMAS COUNTY/
CLACKAMAS COUNTY DISTRICT ATTORNEY,
*Respondent.*

Employment Relations Board
UP708; A142062

259 P3d 932

Kevin Keaney argued the cause and filed the brief for petitioner.

David W. Anderson, Assistant Clackamas County Counsel, argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioner Clackamas County Employees' Association seeks judicial review of an order of the Employment Relations Board dismissing petitioner's complaint against Clackamas County. The association claimed that the county engaged in an unfair labor practice under ORS 243.672. Specifically, it alleged that statements made by the Clackamas County District Attorney during a meeting with association representatives and a bargaining unit member had the natural and probable effect of chilling employees in the exercise of protected rights. The board disagreed. For the reasons explained below, we reverse and remand.

We take the facts as found by the board, which are undisputed. *See AFSCME Council 75 v. Josephine County*, 234 Or App 553, 555, 228 P3d 673 (2010) (adopting uncontested findings on judicial review). On February 1, 2007, Acton began working as a receptionist in the district attorney's office. She was subject to a 12-month probationary period. On January 25, 2008, just before the end of that probationary period, the district attorney's office informed Acton that she was being put on a two-week paid administrative leave, pending a proposed dismissal. The letter concluded by stating that Acton's supervisor, the district attorney, had scheduled a meeting with Acton on January 30, 2008. The purpose of the meeting was to allow Acton "an opportunity to offer information to refute or mitigate the proposed dismissal."

Acton notified her employees' association that the county had proposed a discharge of her employment and requested representation at the January 30 meeting with the district attorney. The association assigned Bailey and Morales to represent Acton at the meeting. Bailey is employed by the association as a service representative. Morales is a county employee but is not employed by the district attorney's office. In addition, Morales is vice-president of the association. Bailey contacted the district attorney's office to request that the meeting be rescheduled to January 31. The district attorney collegially agreed to accommodate Bailey's schedule.

At the meeting, Bailey informed the district attorney that Acton was no longer a probationary employee because her probationary status had expired on January 30, the previous day. Expiration of probationary status would require the county to use different standards to terminate Acton's employment. Because Bailey had requested that the predischarge meeting be delayed by one day, the district attorney believed that the association had deliberately tricked him to obtain an advantage regarding Acton's proposed discharge.

The district attorney yelled at Bailey, accusing him of "playing games." Bailey responded in kind. At some point during the oral exchange, the district attorney looked at Morales and told him to stop smirking. Morales responded that he would smirk if he wanted. The district attorney told Morales that, if he did not stop smirking, the district attorney would remove Morales from the meeting and never again allow Morales in the district attorney's office. Tempers subsided and the meeting returned to the subject of Acton's employment. Ultimately, Acton was discharged. In fact, Morales was not removed from the meeting and has not been barred from attending meetings in the district attorney's office.

The association filed a complaint with the board, alleging an unfair labor practice. Specifically, the association alleged that the district attorney's statements to Morales violated ORS 243.672(1)(a), which makes it an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in * * * the exercise" of protected employment rights. The county contended that the district attorney's statements were merely the sort of heated words that can be expected in a contentious meeting concerning an employee's discharge from employment and therefore did not interfere with, restrain, or coerce employees in the exercise of protected rights.

The board, in a divided opinion, agreed with the county and dismissed the unfair labor practices complaint. The majority reasoned that, under the totality of the circumstances, the district attorney's statements "were an expression of displeasure at Morales' behavior and not a serious, credible threat." Therefore, it concluded that no unfair labor

practice occurred. One member of the board dissented, arguing that the district attorney's statements, which were aimed at suppressing Morales's expression at a meeting he attended as a union representative, were intended to interfere with the exercise of protected activity and also "would have the natural and probable effect of suppressing Morales' right to express himself on behalf of a bargaining unit member." Therefore, the dissent concluded that the district attorney's statements constituted a relatively minor unfair labor practice.

The association petitioned for judicial review, assigning error to the board's dismissal of its unfair labor practice complaint. The parties renew the arguments that they made to the board.

The Public Employees Collective Bargaining Act, ORS 243.650 to 243.782 (PECBA), provides Oregon public employees with "the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining * * *." ORS 243.662. To protect that right, the legislature has made it an unfair labor practice "for a public employer * * * to * * * [i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662." ORS 243.672(1)(a). That provision "encompasses two distinct prohibitions: (1) restraint, interference, or coercion 'because of' the exercise of protected rights; and (2) restraint, interference, or coercion 'in' the exercise of protected rights." *Portland Assn. Teachers v. Mult. Sch. Dist. No. 1*, 171 Or App 616, 623, 16 P3d 1189 (2000). Here, the association alleges an "in the exercise of protected rights" violation.

Against that statutory backdrop, we first consider our standard of review, which depends on the type of statutory language that the legislature required the board to apply. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000) ("When an agency's interpretation or application of a provision of law is at issue, the reviewing court's standard of review depends upon whether the phrase at issue is an exact term, an inexact term, or a delegative term.") (citing *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980)). Exact

terms "impart relatively precise meaning"; inexact terms involve completed legislative policy judgments, but require interpretation to apply the facts to that policy; finally, "delegative terms emerge where the legislature has expressed a general policy and tasks an agency with responsibility" to complete the general policy decision by specifying and "applying it at retail to various individual fact situations." "Nine years old" is an exact term. Examples of delegative terms include "good faith" and "unprofessional conduct." *Springfield Education Assn.*, 290 Or at 223-29. By contrast, the term "act in the capacity of" is an inexact term because its interpretation does not involve a legislative policy judgment. *Coast Security Mortgage Corp.*, 331 Or at 354.

Under ORS 243.672(1)(a), the legislature tasked the board with enforcement of a policy of protecting certain employment bargaining rights from interference, restraint, or coercion by adjudicating complaints of unfair labor practices. *See* ORS 243.672 (directing board to enforce unfair labor practices complaints); *Portland Assn. Teachers*, 171 Or App at 623 (ORS 243.672 protects statutory bargaining rights granted to public employees). Whether a public employer's conduct would "interfere with, restrain, or coerce" employees engaged in protected activities is not an exact standard because the statutory language is open to various interpretations. Also, the terms are not so open-ended that they require the board to complete a policy judgment. Unlike delegative terms like "good faith" and "unprofessional conduct," which require agencies to further describe conduct that is in good or bad faith or professional or unprofessional, the terms in ORS 243.672(1)(a) completely describe the sort of prohibited public employer conduct when public employees are exercising statutorily protected rights. Rather, they are inexact: The board must simply evaluate whether employer conduct falls within the meaning of those terms.

We determine whether the board correctly interpreted inexact terms in the statute in the same manner as we construe any statute. *Coast Security Mortgage Corp.*, 331 Or at 354. That is, our task is to determine the legislature's intended meaning of the statute by examining the text of the statute in context, along with helpful legislative history and, if necessary, other aids to construction. *State v. Gaines*, 346

Or 160, 171-73, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Again, ORS 243.672(1)(a) provides, "It is an unfair labor practice for a public employer or its designated representative to * * * [i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662." For an "in the exercise of protected rights" claim, we have distilled the statute to its essential test, which is "whether, objectively viewed, the action that the employer took under the particular circumstances would chill union members generally in their exercise of protected rights." *Portland Assn. Teachers*, 171 Or App at 624; *AFSCME Council 75*, 234 Or App at 560 (same). Moreover, for an "in the exercise of protected rights" claim, "neither motive nor the extent to which employees actually were coerced is controlling." *Portland Assn. Teachers*, 171 Or App at 624.

We first consider whether Morales was engaged in the exercise of rights guaranteed by ORS 243.662, which provides:

> "Public employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations."

Here, Morales represented Acton in a matter concerning Acton's employment. That right to representation, which flows directly from ORS 243.662, is also implied by one of the policies underlying PECBA of encouraging "practices fundamental to the peaceful adjustment of disputes arising out of differences as to wages, hours, terms and other working conditions * * *." ORS 243.656(3). Further, Morales's right to represent Acton included a right to express himself at the meeting with the district attorney. When the district attorney ordered Morales to stop *smirking*, Morales was *smugly* communicating that the association had outwitted the district attorney, albeit without words.

The county describes Morales's participation at the meeting somewhat differently, contending that

"Morales was able to attend [the meeting] and lend his silent presence in support of Acton. The smirking was simply incidental rude conduct which was not central to the purposes of the meeting and did not rise to the level of conduct protected by law. A provocative action should not be granted the dignity of legal protection."

We do not understand the county to dispute that Morales was engaged in protected activity. Rather, the county describes the protected right that Morales exercised as lending silent presence at the meeting to support Acton. It is immaterial whether it was Morales's presence at the meeting or his smirk (or both) that constituted protected activity.[1] Either way, Morales attended the meeting on Acton's behalf as an association representative, as the county asserts. Morales was engaged in protected activity, and the district attorney threatened to unilaterally terminate Morales's representation of Acton if Morales did not cease what amounted to, in the county's words, "rude conduct." Thus, the issue in this case is whether that threat, objectively viewed under the particular circumstances, would chill association members generally in their exercise of protected activities.

The board has decided two cases that illustrate the issue that this case presents. Particularly, the board's resolution of those cases yields a helpful framework for distinguishing a threatening statement that constitutes an unfair labor practice from one that does not.

In *Oregon Public Employees Union v. Jefferson County*, 18 PECBR 310 (1999) (*OPEU I*), the union alleged an unfair labor practice under ORS 243.672(1)(a), where a county commissioner called the local union president to say that the commissioner wanted the bargaining unit, in an ongoing labor dispute, to be represented by a different union; that the commissioner wanted specific union staff members removed from an ongoing collective bargaining unit; and finally, that the commissioner would not bargain with three members of the union's bargaining team. *Id.* at 316. The

---

[1] We express no opinion on the persuasiveness or effectiveness of Morales's method of representing an association employee.

board concluded that the commissioner's statements constituted an unfair labor practice, because the statements indicated his unwillingness to negotiate with the association and its representatives. *Id.* at 319.

Conversely, in *Oregon Public Employees Union v. Jefferson County*, 18 PECBR 245 (1999) (*OPEU II*), the board found that statements by the very same county commissioner in response to public employees, who were picketing in front of a store that the commissioner owned, did not constitute an unfair labor practice. The picketers were protesting during a labor dispute between the county and its employees. The commissioner confronted the picketers and, "[i]n response to a comment about his business from one of the picket[er]s, [the commissioner] said something to the effect that he was so angry he could kill someone." *Id.* at 246. The union filed an unfair labor practice petition. The board explained that the commissioner's statement did not constitute an unfair labor practice because he "did not address his 'threat' to anyone in particular." *Id.* at 253. Moreover, the board reasoned that "[t]he statement did not concern the exercise of any protected rights, nor could the statement be reasonably construed to relate to the exercise of protected rights." *Id.*

A comparison of *OPEU I* with *OPEU II* illustrates a distinction between employer threats that are directed at protected activity and generic expressions of anger that may be made in the heat of a collective bargaining dispute. We find persuasive the board's reasoning in *OPEU I* that statements that an employer makes that indicate an unwillingness to negotiate with members of a bargaining unit are likely to chill employees from engaging in protected activities. And, as *OPEU II* illustrates, harsh language alone does not constitute an unfair labor practice.[2]

Here, the district attorney threatened to remove an association representative from a protected meeting and threatened to never allow the representative to attend a meeting in the district attorney's office again. The issue in this case is not whether smirking is protected or whether an

---

[2] Indeed, the association does not contend that an unfair labor practice occurred when the district attorney yelled at Bailey.

expression of frustration by a public employer would chill public employees from engaging in protected rights. Rather, the issue is whether the district attorney's threat to remove Morales from representing Acton would chill association members generally in their exercise of protected rights. We agree with the dissenting board member and conclude that it would. As the county stated, an association representative attended the meeting to lend his support to an employee. That support is undermined if the representative can be removed from the meeting because the employer does not like the representative's facial expression.

Nonetheless, the board concluded that, because Morales was not dissuaded by the threat and the district attorney did not actually prevent Morales from remaining at that meeting or prevent Morales from attending any future meetings, the district attorney merely made a threat that was "not a serious, credible threat." The county adopts that argument on appeal, which relies, in part, on *OPEU II*. However, the issue is whether the threat would chill a reasonable employee, not Morales specifically. *See Portland Assn. Teachers*, 171 Or App at 624 ("For an 'in [the exercise of protected rights]' claim, * * * neither motive nor the extent to which employees actually were coerced is controlling."). If the district attorney had carried out his statement, then Morales would have been removed from the meeting. Accordingly, the district attorney's statement served to limit Morales's participation at the meeting. The district attorney stated that, if Morales failed to comport himself in accordance with the district attorney's expectations, he would remove Morales from the meeting. By exerting that level of control over Morales's participation in the meeting, the district attorney's statement was objectively likely to chill employees from exercising protected rights.[3]

We conclude that the board incorrectly interpreted ORS 243.672(1)(a) when it concluded that the district attorney did not interfere with, restrain, or coerce employees in the exercise of protected activity. Accordingly, the board

---

[3] We note that the district attorney then apologized to Acton and told her that what had just occurred had nothing to do with Acton and would not affect his decision about Acton's continued employment.

erred in dismissing the union's unfair labor practices complaint.

Reversed and remanded.