Argued and submitted December 19, 2017; reversed and remanded
September 18, 2019

David S. FULLER,
*Petitioner,*

*v.*

DEPARTMENT OF PUBLIC SAFETY
STANDARDS AND TRAINING,
*Respondent.*

Department of Public Safety Standards and Training
16332; A162539

452 P3d 450

Petitioner seeks judicial review of a final order of the Department of Safety Standards and Training (DPSST) that revoked his certifications to be a police officer. That order was based on DPSST's determination that petitioner had engaged in "dishonesty"—one of the categories of "discretionary disqualifying misconduct" under OAR 259-008-0070(4)(b). On appeal, petitioner raises two arguments: first, he argues that DPSST legally erred in interpreting the term "dishonesty" as it is used in the rule, and second, he argues that DPSST failed to support its decision to revoke his certifications with substantial reason. The Court of Appeals held that DPSST's order was unsupported by substantial reason, and therefore reversed and remanded on that basis.

Reversed and remanded.

Wayne Mackeson argued the cause for petitioner. Also on the briefs was Wayne Mackeson, P.C.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

EGAN, C. J.

Reversed and remanded.

**EGAN, C. J.**

Petitioner seeks judicial review of a final order of the Department of Public Safety Standards and Training (DPSST) that revoked his Basic, Intermediate, and Advanced Police Certifications. That order was based on DPSST's determination that petitioner had engaged in "dishonesty"— one of the categories of discretionary disqualifying misconduct under OAR 259-008-0070(4)(b). On appeal, petitioner raises two alternative arguments: first, that DPSST legally erred in interpreting the term "dishonesty" as it is used in the rule, and second, that DPSST failed to provide substantial reason for its decision to revoke his certifications. As explained below, we conclude that DPSST's order is unsupported by substantial reason. Therefore, we reverse and remand on that basis.

Before describing the facts of this case, we set out the administrative framework under which DPSST sought to revoke petitioner's certifications. DPSST is authorized to revoke a public safety professional's certification based on a finding that the individual has failed to meet "the applicable minimum standards *** established under ORS 181A.410(1)(a) to (d)." ORS 181A.640 (2015).[1] "[T]o promote enforcement of law *** by improving the competence of public safety personnel and their support staffs," the Board on Public Safety Standards and Training (board), in consultation with DPSST, is required to establish certain standards for certification. ORS 181A.410(1). Those include "reasonable minimum standards of physical, emotional, intellectual and moral fitness for public safety personnel." ORS 181A.410 (1)(a). DPSST recommended and the board established by administrative rule, those standards accordingly in OAR 259-008-0010 and OAR 259-008-0070.[2]

In OAR 259-008-0010, the board established broad minimum standards in each category of physical, emotional, intellectual, and moral fitness. With regard to moral fitness,

---

[1] ORS 181.640 and ORS 181.410 were renumbered, respectively, as ORS 181A.640 and ORS 181A.410 in 2015. Because the relevant text of the statutes are identical, we refer to the current versions throughout this opinion.

[2] We cite the 2014 version of OAR 259-008-0010 and OAR 259-008-0070, in effect at the time DPSST entered its final order. The rule has since been amended.

which is the only standard at issue in this case, OAR 259-008-0010(6) provides:

> "Moral fitness (Professional Fitness). All law enforcement officers must be of good moral fitness. For purposes of this standard, lack of good moral fitness includes, but is not limited to:
>
> "(a)   Mandatory disqualifying misconduct as described in OAR 259-008-0070(3); or
>
> "(b)   Discretionary disqualifying misconduct as described in OAR 259-008-0070(4)."

The difference between mandatory and discretionary disqualifying misconduct is that a finding of the former *must* result in the denial or revocation of a public safety officer's certification, while the latter gives DPSST the *discretion* to deny or revoke the officer's certification. OAR 259-008-0070(3)(a); OAR 259-008-0070(4)(a). For both types of misconduct, OAR 259-008-0070(1) provides that

> "[i]t is the responsibility of the Board to set the standards, and of the Department to uphold them, to ensure the highest levels of professionalism and discipline. These standards shall be upheld at all times unless the Board determines that neither the safety of the public nor respect of the profession is compromised."

As the misconduct at issue in this case concerns "discretionary disqualifying misconduct," we narrow our examination to that rule accordingly. For purposes of the rule, "discretionary disqualifying misconduct includes misconduct falling within [several categories]." OAR 259-008-0070(4)(b). Category one is

> "Dishonesty: Includes untruthfulness, dishonesty by admission or omission, deception, misrepresentation, falsification[.]"

OAR 259-008-0070(4)(b)(A).

As noted above, when a public safety professional engages in discretionary disqualifying misconduct, DPSST "*may* deny or revoke" the individual's certification. OAR 259-008-0070(4)(a) (emphasis added). In order to exercise its discretion to do so, DPSST must provide the public safety professional with "written notice, and a hearing,

if requested."[3] OAR 259-008-0070(4)(a); *see also* OAR 259-008-0070(9)(e) ("Upon determination that the reason for denial or revocation is supported by factual data meeting the statutory and administrative rule requirements, a contested case notice will be prepared and served on the public safety professional.").

With that statutory and administrative framework in mind, we turn to the relevant, undisputed facts and the procedural history of this case. In 2012, petitioner was employed by the Columbia County Sheriff's Office (CCSO) and held Basic, Intermediate, and Advanced Police Certifications. In March of 2012, petitioner attended a political fundraiser at a casino in Washington. To get there, petitioner drove from his home in Scappoose, Oregon, and boarded a bus in Longview, Washington, that took him the rest of the way. After spending the evening at the casino, which included gambling and drinking alcohol, petitioner rode the bus back to Longview where he got in his car to drive home. On his drive home, petitioner crashed his car into a ditch. He did not report the crash as an accident to law enforcement.

CCSO subsequently opened an internal affairs investigation based on allegations that petitioner had "violated the law by driving under the influence of intoxicants and failing to report an accident." During that investigation, Lieutenant Hald interviewed petitioner and asked him if he had made any phone calls on the way back from the casino on the bus. Petitioner said that he had, including one to his daughter. Hald asked what petitioner had asked his daughter. Petitioner responded that he was "[j]ust talking to her" and "[didn't] remember what [he] asked."

In March of 2013, DPSST issued a notice of intent to revoke petitioner's police certifications based on allegations of gross misconduct, misconduct, and dishonesty. Petitioner requested a contested case hearing. At the contested case

---

[3] Prior to issuing that written notice to the public safety professional, OAR 259-008-0070(9) provides an additional procedural step that, "[i]f the Department determines that a public safety professional may have engaged in discretionary disqualifying misconduct listed in subsection (4), the case may be presented to the Board, through a Policy Committee." OAR 259-008-0070 (9)(c)(C).

hearing, petitioner was interviewed under oath by counsel for DPSST. This time, petitioner gave different answers when asked about his phone calls on the bus ride. Petitioner testified that he had first called his wife because it was their anniversary, and that he had called "just to talk to her and let her know that [he] was on [his] way home." Petitioner testified that he had next called his daughter, "basically to find out how mom was doing or how, you know, find out how their evening went." When asked why petitioner called his daughter to ask how his wife was doing just after speaking directly to his wife, he explained:

> "I wanted to see what her mentality was since we weren't together for our anniversary, basically. That's what it was, just seeing if she was okay as far as she can tell me one thing and tell my daughter something else[.]"

Counsel for DPSST later pressed petitioner about his previous answer during the internal affairs interview with Hald. When petitioner was asked whether he had given "a truthful and honest answer," he admitted that he had not because he "didn't think it was [DPSST's] business."

Ultimately, DPSST issued a final order adopting the ALJ's proposed order and reversing DPSST's 2013 notice of intent to revoke. Because the notice did not include petitioner's deception and lack of cooperation during the Hald interview as an allegation of misconduct, DPSST adopted the ALJ's determination that DPSST could not revoke petitioner's certifications based on its 2013 notice.

Shortly thereafter, in December 2014, DPSST issued a new notice of intent to revoke petitioner's certifications. That notice told petitioner, in part:

> "Your conduct involved Dishonesty. You lied during your internal affairs interview about those issues as noted in the [Police Policy Committee] Staff Report for this meeting, and you admitted during your hearing that you lied. Your conduct constitutes Dishonesty and is a separate and sufficient basis to revoke your certifications."

DPSST alleged five specific instances of "dishonesty," including the discrepancy between what petitioner told Hald and what he said at the hearing regarding his phone call with

his daughter.[4] Petitioner requested a contested case hearing, and the parties filed cross-motions for summary determination. In his motion, petitioner argued that, by comparing the answers he gave during the Hald interview to the ones he gave at the hearing, it was clear that he was "truthful and honest." Therefore, petitioner argued, there was no genuine issue as to any material fact; in other words, he contended that the facts indisputably revealed that he was *not* dishonest. As a result, he argued that he was entitled to prevail as a matter of law. DPSST filed a cross-motion for summary determination, arguing that it was "undisputed based on the facts in the record" that petitioner's conduct during the Hald interview fell within the meaning of "dishonesty," as provided in the rule, and that therefore, DPSST was entitled to revoke his certifications as a matter of law. Petitioner responded to DPSST's motion, again arguing that there was no evidence that he was dishonest, and specifically responding to the allegation regarding his phone call with his daughter by explaining that his "knowing" failure to disclose that he did remember the purpose of the call was, as a matter of law, not "dishonest," because that information was "not material." According to DPSST, however, it was not required to show that petitioner's dishonesty had been material; petitioner had demonstrated that he lacks the good moral fitness required to be a law enforcement officer, and DPSST therefore had the discretion to revoke his certifications.

The ALJ ruled on the parties' motions and issued a proposed order, purporting to resolve three issues:

"1.   Whether there is a genuine issue as to any material fact and whether a party is entitled to a favorable ruling as a matter of law. OAR 137-003-0580.

"2.   Whether [petitioner] engaged in conduct involving dishonesty. OAR 259-008-0070(4)(b)(A).

"3.   Whether DPSST should revoke [petitioner's] basic, intermediate and advanced police certifications. [ORS 181A.410(1); ORS 181A.640(1)(c);] OAR 259-008-0070(4)."

---

[4] The other allegations of dishonesty related to (1) the number of alcoholic drinks petitioner consumed, (2) his phone conversation with his wife, (3) the locations from which he purchased alcoholic beverages, and (4) the casino games he played. The ALJ found that DPSST had failed to prove those allegations, and they are not at issue on appeal.

Ultimately, the ALJ concluded that there was no genuine issue of material fact that petitioner had engaged in dishonesty when he did not disclose to Hald, the internal affairs investigator, that he did remember the telephone conversation with his daughter.[5] The ALJ concluded, however, that DPSST should not exercise its discretion to revoke petitioner's certifications. The ALJ explained her reasoning in the proposed order. First, the ALJ agreed with DPSST that "it is the act of dishonesty that gives rise to a finding of disqualifying misconduct, not the substance of the dishonesty," because "nothing in [the] text [of the rule] would indicate that materiality of a false statement *** control[s] whether it arises to dishonesty." Thus, because petitioner "was dishonest in his response to Hald when he falsely claimed that he could not recollect his conversation with his daughter," the ALJ concluded that petitioner had engaged in discretionary disqualifying misconduct under OAR 259-008-0070 (4)(b)(A). As a result of that "dishonesty," the ALJ recognized that DPSST was statutorily authorized to revoke petitioner's certifications. However, the ALJ recommended against revocation because it was a "harsh sanction" that the ALJ determined to be inappropriate after taking into account all of the relevant evidence.[6]

---

[5] The ALJ's proposed order contains a section labeled "Findings of Fact." However, when an agency adjudicator resolves a contested case proceeding on a motion for summary determination, the agency cannot engage in factfinding. *See King v. Dept. of Public Safety Standards*, 289 Or App 314, 319 n 5, 412 P3d 1183 (2017), *rev den*, 363 Or 104 (2018). Therefore, we understand the ALJ's statement of the facts to be a statement of the undisputed facts, rather than a statement of factual findings.

[6] The ALJ explained:

"Although DPSST proved that [petitioner] engaged in dishonest conduct, DPSST failed to establish all of its allegations of dishonesty. DPSST only established one of the five allegations of dishonesty—that [petitioner] was dishonest when he claimed not to remember his conversation with his daughter. As explained *** the materiality of the statement is irrelevant in the determination of the honesty of the statement. However, it reflects on the degree of the deplorable nature of the dishonest conduct. *** [H]e did not provide a dishonest answer to Hald in order to evade a finding that he committed a crime or violation, an action that would be inexcusable [*sic*] reprehensible from a public safety officer. Instead, he provided the dishonest answer because it concerned his personal life with his family. Finally, [petitioner] worked for CCSO for approximately 29 years at the time of the Hald interview. He had a long career as a public safety professional with no evidence of prior sanctions for any disqualifying conduct."

DPSST made substantial modifications to the ALJ's proposed order and issued amended rulings on the motions for summary determination.[7] DPSST deleted portions of the ALJ's reasoning, as well as her conclusion that DPSST should not revoke petitioner's certifications based on his dishonest conduct. DPSST explained that dishonesty by a law enforcement officer has implications beyond what the ALJ considered, because "dishonesty by a law enforcement officer also impacts that officer's ability to testify as a witness and erodes public confidence in the profession." And, although DPSST seemingly agreed with the ALJ's conclusion that it was not required to show that petitioner's act of dishonesty was material to Hald's investigation, it appears to have rejected her implicit conclusion that petitioner's dishonesty was not material at all.

Finally, DPSST modified language in the proposed order to explain that it *would* exercise its discretion to revoke petitioner's certifications under OAR 259-008-0070(4)(a). DPSST explained, in part:

> "The content of [petitioner's] conversation with his daughter, his discussion with her as to whether his wife was upset about their anniversary, was potentially material to that investigation.

> "Independent of the materiality of [petitioner's] [d]ishonesty with regards to the criminal investigation, law enforcement officers are professional witnesses and testifying in court is a critical function of their position and maintaining their credibility is essential. Under *Brady v. Maryland*, 373 US 83 [83 S Ct 1194, 10 L Ed 2d 215] (1963) and *Giglio v. United States*, 405 US 150 [92 S Ct 763, 31 L Ed 2d 104] (1972), the prosecution has an affirmative obligation to disclose exculpatory evidence—this includes any information that may be used to impeach the credibility of prosecution witnesses. An officer who has been found to have been dishonest has his ability to assist in any prosecution significantly impaired. Further, allowing a law enforcement officer who has been proven to be dishonest to continue in

---

[7] *See* ORS 183.650(2) ("If the administrative law judge assigned from the office will not enter the final order in a contested case proceeding, and the agency modifies the form of order issued by the administrative law judge in any substantial manner, the agency must identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications.").

the profession degrades the credibility of other law enforcement officers and undermines the confidence of the public in the profession."

Petitioner filed exceptions to the proposed order, but ultimately, DPSST made no changes and issued a final order revoking petitioner's Basic, Intermediate, and Advanced Certifications on May 2, 2016.

On review, petitioner argues that DPSST erred in issuing the final order revoking his certifications. First, petitioner contends that DPSST erred in interpreting the term "dishonesty" as it is used in the administrative rule. To petitioner, "dishonesty" must concern a material matter—*i.e.*, "a matter that would or could significantly influence the recipient's decision-making process"—to demonstrate that a public safety officer lacks "moral fitness." Second, even if DPSST correctly interpreted "dishonesty" as meaning *any* untruthful act concerning *any* subject, petitioner contends that DPSST's conclusion, based upon his untruthful statement to Hald, that he lacked "moral fitness" is not supported by substantial reason.

DPSST's response to petitioner's argument is nuanced. DPSST contends in its briefing that it is entitled to deference regarding its interpretation of "its own rule," and that its interpretation of "dishonesty" is supported by the text and context of the rule. However, its position at oral argument was *not* that just "any" untruth qualified as dishonesty under OAR 259-008-0070(4)(b)(A). Thus, DPSST appears to agree to some extent with petitioner's first argument, namely, that some degree of "materiality" is required.[8] As to petitioner's second argument, DPSST responds that it established the necessary "rational connection" between petitioner's dishonesty—as it construed that term—and its ultimate decision to revoke his certifications.

Before turning to those arguments, we pause to note that, after briefing in this case was complete, we decided *King v. Dept. of Public Safety Standards*, 289 Or App 314, 412 P3d 1183 (2017), *rev den*, 363 Or 104 (2018).

---

[8] It is not clear to what extent DPSST agrees that petitioner's untruthful act was required to be material to Hald's investigation, or, instead, merely material to some aspect of petitioner's fitness to function as a law enforcement officer.

There, DPSST had revoked the petitioner's Corrections Officer Certification after an ALJ ruled, on a motion for summary determination, that the petitioner had engaged in "discretionary disqualifying misconduct" as a matter of law. We held that, because whether DPSST "should" have revoked the petitioner's certification was "not a question that demand[ed] a particular result as a matter of law," the ALJ erred in granting DPSST's motion for summary determination and ordering the revocation of the petitioner's certification. *Id*. at 321. We remanded for the agency to hold a contested case hearing, at which "DPSST [was] expected to consider all of the relevant evidence in making its determination whether it should revoke a corrections officer's certification." *Id*. In this case, because petitioner does not argue that *King* requires reversal, we do not address the potential implications of that decision, except that we presume that the DPSST will provide petitioner, if he so requests, with a contested case hearing on remand.

Returning to petitioner's first argument, petitioner contends that DPSST legally erred in interpreting the term "dishonesty" as it is used in the context of a revocation of certification under OAR 259-008-0070(4)(a). To reiterate, petitioner argues that, to be "discretionary disqualifying misconduct" under the applicable rules, an act of "dishonesty" must be shown to be "material." DPSST responded in its brief that *any* act of dishonesty by a police officer, regardless of its substance, is discretionary disqualifying misconduct because *any* dishonesty by a police officer compromises the officer's ability to perform his or her job. At oral argument, however, DPSST acknowledged that there must be *some* nexus between the act of dishonesty and the certification to be a police officer. In other words, DPSST recognized that there must be some connection between the conduct involving dishonesty and the public safety professional's ability to perform his or her job.[9]

_____

[9] For example, DPSST contended at oral argument that in this case, the nexus was that DPSST "had [petitioner] on record being willing to lie to an investigator of his own department." Petitioner responded that DPSST was wrong about the "nexus" in this case, because in any hypothetical future criminal trial that petitioner might testify in, the court would not get into specific instances of untruthfulness due to the rules of evidence.

We accept DPSST's acknowledgment that, consistent with petitioner's view, *any* act of dishonesty is not inherently discretionary disqualifying misconduct under its rule. To the extent DPSST's final order is premised on the contrary view expressed in its brief, the order cannot stand. However, it is not entirely clear that, in stating in the order that its decision was "[i]ndependent of the materiality of [petitioner's] dishonesty *with regards to the criminal investigation*," DPSST interpreted the rule as dispensing with a materiality requirement altogether. (Emphasis added.)[10] Thus, we turn to examine petitioner's second argument that DPSST's conclusion—that his dishonest act compromised his "moral fitness" to be a law enforcement officer—was not supported by substantial reason.

The substantial reason requirement exists, in part, "to ensure that the agency gives responsible attention to its application of the statute." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982). Thus, pursuant to our substantial reason review, we look to whether the agency has "articulate[d] a rational connection between the

[10] Ordinarily, to interpret an administrative rule, we apply the same analytical framework that applies to the interpretation of statutes. *Brand Energy Services LLC v. OR-OSHA*, 261 Or App 210, 214, 323 P3d 356 (2014). To the extent that an agency is interpreting its own rule, we defer to that interpretation if it is plausible and not inconsistent with the wording of the rule itself, the rule's context, or any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). Though DPSST claims to be interpreting "its own rule," we note that it is actually the board that "shall establish" the minimum standards for moral fitness. ORS 181A.410(1)(a). DPSST shall merely "recommend" those standards. *Id.* Thus, we express no opinion on whether we would defer to DPSST's interpretation of "dishonesty," because we do not reach that issue to resolve this case.

We also do not understand petitioner to argue that, in construing and applying the rule, DPSST acted outside the range of discretion delegated to it and the board by law. *See* ORS 183.482(8)(b)(A) ("The court shall remand the order to the agency if the court finds the agency's exercise of discretion to be *** [o]utside the range of discretion delegated to the agency by law[.]"). At oral argument, petitioner argued that DPSST abused its discretion in ordering the revocation of his certifications, but contended that our analysis of DPSST's action would be pursuant to our "substantial reason" review. We understand petitioner to argue that there could *never* be "substantial reason" to support a finding of misconduct for "any" untruth, because that would be an abuse of discretion. However, because petitioner did not argue below that DPSST had erred under ORS 183.482 (8)(b)(A), and because we remand to the agency, we do not reach the issue of whether DPSST's exercise of discretion was outside of the range delegated to the DPSST and the board by law.

facts and the legal conclusions it draws from them." *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014) (internal quotation marks omitted). An agency order regarding a contested case that lacks such reasoning requires us to reverse and remand for the agency to correct the deficiency. *Id.*

To review, in this case, petitioner participated in an internal investigation regarding his involvement in an automobile accident after attending a fundraiser at a casino where he drank alcohol. When petitioner was asked why he called his daughter, he stated that he was "just talking to her" and did not remember what they talked about. When petitioner was asked again about that phone call later in his contested case hearing, he admitted, under oath, that he had not been truthful. Petitioner stated that he actually did remember what he talked about with his daughter—they talked about whether his wife was upset because petitioner had not been at home for their anniversary—but that he did not disclose the truth because he did not think that was any of the investigator's business. Thus, petitioner admitted, under oath, to being dishonest about a personal matter during an internal investigation.

DPSST based its conclusion that petitioner lacked moral fitness on the fact that his statement to Hald was "an act" of dishonesty. As noted, it stated that, "[i]ndependent of the materiality of [an officer's] dishonesty with regards to [a specific] criminal investigation," an officer "who has been proven to be dishonest" will essentially be forever compromised: his "ability to assist in any prosecution significantly impaired" and his continuation in the profession a "degrad[ation of] the credibility of other law enforcement officers." On review, in response to petitioner's substantial reason argument, DPSST argues that this establishes a rational connection between petitioner's dishonesty and its ultimate decision to revoke petitioner's certifications. In particular, DSPPT argues that petitioner's dishonesty (1) impaired petitioner's ability to assist in prosecutions because, due to required *Brady* disclosures, he could be impeached and have his credibility diminished, and (2) would degrade the credibility of and undermine public confidence in law enforcement generally.

We agree with petitioner that DPSST's explanation for its conclusion does not comport with substantial reason. First, regarding the possibility of petitioner being impeached in future prosecutions, we do not see how that conclusion follows from the evidence that petitioner was admittedly dishonest with Hald. That is, had petitioner been *convicted* for dishonest conduct, DPSST's understanding that petitioner's dishonesty had impaired his ability to assist in prosecutions might be correct. However, in this case, petitioner was not convicted of a crime. At least as a matter of state evidence law, any impeachment regarding petitioner's dishonesty would, it seems, be limited by OEC 608, as, under that rule, specific instances of misconduct typically are not admissible to attack a witness's credibility. OEC 608(2).[11] As a result, unlike DPSST, we do not readily perceive how petitioner's admitted act of dishonest conduct would necessarily impact his ability, whole cloth, to assist in future prosecutions, and nothing in DPSST's order provides us with that explanation.

Next, DPSST stated that allowing petitioner to continue to hold his police certifications despite his admitted dishonesty would degrade the credibility of, and undermine public confidence in, law enforcement generally. Again, however, DPSST does not explain the connection between petitioner's dishonesty here and the erosion of public confidence in law enforcement generally. Petitioner admitted, under oath, that he had earlier refused to tell Hald the details of a phone call he had with his daughter about his wife, because he did not think that his employer had any business inquiring into such details of his life. We do not perceive the

---

[11] OEC 608 provides:

"(1) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness; and

"(b) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in [OEC 609], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

rational connection between that dishonest conduct and the loss of public confidence in law enforcement as a whole, and DPSST's order does not explain further.

In sum, we conclude that DPSST's conclusion to revoke petitioner's certifications is unsupported by substantial reason; accordingly, we reverse and remand.

Reversed and remanded.