Argued and submitted July 8, reversed and remanded December 23, 2020

## CLACKAMAS COUNTY EMPLOYEES' ASSOCIATION,
*Petitioner,*

*v.*

## CLACKAMAS COUNTY,
*Respondent.*

### Employment Relations Board
### UP01018; A170373

480 P3d 993

Petitioner—a labor union—seeks judicial review of an Employment Relations Board (ERB) order dismissing its unfair labor practice claims under ORS 243.672(1)(a). ERB dismissed the claims after it determined that a union representative's unprofessional email to a supervisor for which he was disciplined was not union advocacy protected by the statute. Petitioner contends that ERB's order lacks substantial reason because, in determining that the email was not protected activity, ERB did not give substantial weight to the context in which it was sent. Additionally, petitioner argues that ERB erred in determining that, because the email was unprotected activity, disciplining the representative for sending it would not have had the natural and probable effect of deterring employees from engaging in protected activity. *Held*: Although ERB's determination that the email was unprotected activity was supported by substantial reason, it erred in concluding that the representative's discipline would not have deterred other employees simply because the email was unprotected. Even if an employee's activity is itself unprotected, an employer can still violate ORS 243.672(1)(a) if, objectively viewed under the particular circumstances, the employer's actions would have the natural and probable effect of chilling employees in the exercise of their protected rights. On remand, ERB must apply the appropriate test.

Reversed and remanded.

Kevin Keaney argued the cause and filed the brief for petitioner.

Andrew M. Narus argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

This case requires us to determine whether an employer's decision to discipline an employee labor representative for acting unprofessionally during what the employee reasonably perceived to be protected labor activities amounts to an unfair labor practice under the Public Employee Collective Bargaining Act (PECBA). Because we conclude that the Employment Relations Board (ERB) misapplied the law, we reverse ERB's decision and remand for it to correct the error.

## I.   BACKGROUND

We spend some time with the timeline of facts, taken from ERB's findings and the record, because context is critical. Morales, an elected member of the Clackamas County Employees' Association (the Association), frequently represented county employees in disciplinary matters. From late 2017 to early 2018, he represented a union member, EZ, during two contentious disciplinary matters involving a manager, Dooley. The first matter related to events in late 2017 and did not end favorably for EZ. In that matter, Dooley and another manager, King, conducted an investigative interview with EZ, represented by Morales, on December 13, 2017. Dooley issued a notice of proposed suspension to EZ on January 4, 2018. On January 9, Dooley conducted a mitigation meeting with EZ and Morales regarding the proposed suspension.

Approximately two weeks later, on January 24, another notice of investigative interview on a separate new matter was issued against EZ. That interview was held the next day, on January 25, where a similar scene played out: Morales again represented EZ in an investigative interview with Dooley and King. That same day, Dooley emailed the final decision in the *first* case and officially issued a suspension for EZ. Morales responded that day via email to Dooley and others expressing his frustration with inaccuracies in the notice of suspension and other errors in the proceedings that he attributed to Dooley.[1] Dooley forwarded this email to

---

[1] That email stated, in pertinent part:

"You send out meeting letters with the wrong month and you send out a suspension notice with two days instead of one.

the county's Human Resources Department because of her belief that it was unprofessional. Human Resources did not discipline Morales, but did send him an email expressing dissatisfaction with his tone and requesting that he read future emails before sending them.[2] Morales forwarded that email to Association officers and again expressed his frustration over the manner and quality of Dooley's handling of disciplinary proceedings and his concern over the impact of those errors on the Association's ability to represent employees.

Over three weeks passed after this heated email spate while EZ and Morales were waiting for the outcome of the second investigation. At some point during the week of February 18, King verbally informed EZ (but not Morales) that management had decided not to impose any discipline against him. Morales, however, continued to believe that the second proceeding—and his representation of EZ—was ongoing. That same week, King announced her resignation from the county. EZ forwarded that announcement email to Morales with the letters "FYI" and a smiley face. Morales responded, "You think she got tired of 'Looney' Dooley" and copied Dooley on the response. Dooley again forwarded Morales's email to Human Resources, stating "Wow, such professionalism." This time, Human Resources decided to initiate disciplinary proceedings.

At the hearing before ERB, Morales explained that he was still "waiting for the response" on the second disciplinary matter and he worried that management was

---

"<u>THIS</u> IS UNPROFESSIONAL…AND INCOMPETENT.

"In the future please read what you [are] sending out BEFORE you send it."

Dooley forwarded that email with the following text: "I guess this email sates [*sic*] it all. How about the unprofessional email. I really am tired of this bullying and intimidation that he is allowed to get away with. Leslie will follow up with an email around our investigation today. Thanks."

[2]  That email stated:

"I know that having [a] respectful and professional work environment is important to you and me, as well as CCEA and the County as a whole; however, I must say that the content and tone of your email below was not called for, nor was it conducive to a collaborative and respectful working relationship and environment. In line with the advice you provided to * * * Dooley, please read what you are sending before you send it. We can talk more about this if you wish."

intentionally delaying a decision to "keep [EZ] stressed out, to keep something over his head." According to Morales, in his experience, Dooley "only moves when you really push a little or send a message." The county issued a written reprimand, concluding that Morales violated various professionalism provisions of County Personnel Ordinances. The Association, on Morales's behalf, appealed the reprimand to ERB.

Before ERB, the Association contended that the reprimand was an unfair labor practice in violation of ORS 243.672(1)(a) because Morales was punished for his involvement in protected union activity. In the alternative, it contended that the reprimand for his engagement in the exercise of union activity would chill employees from participating in protected activity. ERB disagreed, rejecting the notion that the email was protected activity in the first place because nothing about it related to Morales's role as a union representative. As far as chilling other employees, ERB concluded that "in light of" its determination that the email was not protected activity, the "reprimand would not have the natural and probable effect of deterring employees from engaging in protected activity." The Association renews its arguments on appeal.

## II.   STANDARD OF REVIEW

We review ERB's order for substantial evidence and substantial reason. ORS 183.482(8)(c). "Substantial evidence to support a finding of fact is evidence that, viewing the record as a whole, would permit a reasonable person to make that finding." *Portland Assn. Teachers v. Mult. Sch. Dist. 1*, 171 Or App 616, 627, 16 P3d 1189 (2000). Substantial reason requires us to review the reasoning that led ERB from those facts to its conclusions and evaluate whether that reasoning reflects a correct interpretation of the law. *Id*.

## III.   ANALYSIS

Public employees have the right to "participate in the activities of labor organizations *** for the purpose of representation and collective bargaining." ORS 243.662. ORS 243.672(1)(a) protects that right by making it an

unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in or because of the exercise of" those rights. As we have observed, the text of ORS 243.672(1)(a) encompasses "two distinct prohibitions:" one that protects employees from interference, restraint or coercion "because of" protected activity and one that protects employees from interference, restraint, or coercion "in" the exercise of protected activity. *Portland Assn. Teachers*, 171 Or App at 623. The "because of" prong hinges on the *motive* behind the employer's action whereas the "in" prong hinges on the *consequences* of that action. *Id.*

A.  *"Because of" Claim*

It is undisputed that the county took an adverse employment action (a written reprimand) *because of* Morales's email. The county contends however—and ERB concluded—that the county was authorized to punish Morales for sending the email because it was not protected activity in the first place.

The Association responds that the email was part and parcel of Morales's role as a union representative. Morales was actively representing EZ in one investigation and had just completed representation of EZ in another. Indeed, the first investigation was very contentious, and Morales had not been shy about expressing his unvarnished views that Dooley mishandled the investigation and obstructed Association activities.[3] The Association also points out that Morales and Dooley work in completely different sections of the county and had no social relationship outside the county; meaning that the only reason Morales would have for including Dooley on the email would be in his capacity as a union representative.

In reviewing ERB decisions, we are mindful that "the legislature has delegated to ERB the authority to determine the range of activities" that are protected by PECBA. *Central School Dist. 13J v. Central Education Assoc.*, 155 Or App 92, 94, 962 P2d 763 (1998) (citing *Springfield Education*

---

[3] Morales explained his aggressive strategy to Association members in his January 29 email: "Maybe, some feathers were ruffled enough to encourage a change."

*Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980)). Taking that together with our deferential standard of review, although a close call, we conclude that ERB's determination that the email is not protected activity is supported by substantial evidence.

The email contained only six words that can readily be characterized as an insult to Dooley, an insult that Morales forwarded to Dooley herself. Nothing in the content—as opposed to the *context*—of the email had anything to do with any investigation for which Morales was serving as a union representative. Although Morales would only have reason to email Dooley because of his work as a union representative, that fact does not insulate all communications with her from discipline. Given the lack of other content in the email and the temporal distance between the email and any other union-related communications, ERB's conclusion that the insult was not factually connected to Morales's work as a union representative is permissible. In light of that, ERB's determination that an email unrelated to union activity is not protected is supported by substantial reason.[4]

## B. *"In" Claim*

Turning to the "in the exercise" claim, our focus shifts from the *motive* behind the county's action to the likely *effect* of the county's action. *AFSCME Council 75 v.*

---

[4] Part of the reason that this is a close call is that the text of the email is not the only consideration. Federal cases interpreting the National Labor Relations Act (NLRA) have emphasized the importance of viewing insulting or offensive remarks in the greater context of the employer-employee relationship to determine whether they are protected activities. *See, e.g.*, *Reef Indus., Inc. v. N.L.R.B.*, 952 F2d 830, 838 (5th Cir 1991) (concluding that the act of sending a t-shirt with a cartoon mocking management to a supervisor was a protected activity under the NLRA because, when considered in context with events occurring during the parties' labor dispute, there was evidence that the cartoon related to union activities); *see also Leasco, Inc.*, 289 NLRB 549, 552 (1988) (employee who tells his supervisor he will "kick [his] ass" in the context of a workplace complaint is protected). Although we are not bound by federal case law, we do look to cases interpreting the NLRA as persuasive authority and observe that several contextual factors support the Association's position. *Portland Assn. Teachers*, 171 Or App at 631 n 6 (because the PECBA was adopted to model the NLRA, court looked to "cases decided under the federal act—and particularly to cases decided before 1973, the year in which PECBA was adopted—for guidance in interpreting PECBA"). Indeed, the facts here are close enough that had ERB determined that the email did amount to protected activity, we would conclude that substantial evidence supported that decision as well.

*Josephine County*, 234 Or App 553, 559, 228 P3d 673 (2010). Accordingly, the question is whether that action, "objectively viewed *** under the particular circumstances[,] would chill [Association] members generally in their exercise of protected rights." *Id.* at 560. We conclude that ERB's resolution of this claim is not supported by substantial reason.

Our substantial reason review requires us to determine whether ERB has "articulate[d] a rational connection between the facts and the legal conclusions it draws from them." *Fuller v. Dept. of Public Safety Standards*, 299 Or App 403, 413-14, 452 P3d 450 (2019) (citing *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014)). An order that fails to consider the facts necessary to reach that conclusion lacks substantial reason. *Kay v. Employment Dept.*, 284 Or App 167, 175, 391 P3d 969 (2017).

ERB rejected the Association's "in" claim concluding that, "in light of [its] finding that Morales was not engaged in protected activity," the county's imposition of discipline "would not have the natural and probable effect of deterring employees from engaging in protected activity." As both parties acknowledge, contrary to ERB's apparent rationale, however, an "in" claim does not require the existence of a protected activity. Although establishing that the county acted because of an employee's protected activity would be one way to mount an "in" the exercise claim, it is not the only one. Indeed, as ERB itself has recognized, an employer action "that might otherwise be lawful can nevertheless violate [the 'in the exercise' clause] depending on the timing and circumstances." *Crook County Firefighters Association, IAFF Local 5115 v. Crook County Fire and Rescue*, UP-011-18, ___ PECBR ___, ___ (Dec 5, 2019) (citing *Portland State University Chapter American Association of University Professors v. Portland State University*, 26 PECBR 438, 450 (2015)). Specifically, an employer could violate the "in" clause by "present[ing] an entirely lawful act in such a way that reasonably leads others to believe it was unlawfully based on protected activity." *Eugene Charter School Professionals, AFT, AFL-CIO v. Ridgeline Montessori Public Charter School*, 23 PECBR 316, 331 n 13 (2009). In other words, the analysis is laser-focused on the natural and

probable effect of the employer's actions on employees' willingness to engage in protected activity, not on whether the employee engaged in protected activity.

In a footnote, ERB acknowledged that "engagement in protected activity is not always an element of an 'in' claim" but observed that "the Association does not allege, and there is no evidence establishing, that the county engaged in other conduct, such as discussing Morales's discipline with other county employees, that would naturally and probably deter employees from engaging in protected activity." This formulation also misstates the legal framework. The standard, which is an objective one, does not turn on whether anyone other than the disciplined employee was aware of the employer's action. The question is simply whether, from an objective standpoint and in the context of the surrounding circumstances, the employer's action would have the natural and probable effect of chilling a union member from exercising the member's protected rights. *Clackamas County Employees' Assn. v. Clackamas County*, 243 Or App 34, 40, 259 P3d 932 (2011). In other words, an assessment of whether the employer's action would have the type of deterrent effect prohibited by ORS 243.672(1)(a) does not turn on whether the employer took the action without publicizing it to other employees.

For example, in a previous case involving this same union representative, the Clackamas County District Attorney threatened to remove Morales from a meeting unless he stopped "smirking." *Id*. at 37. The county argued that, although Morales had the right to participate in the meeting, he did not have the right to engage in "rude conduct." *Id*. at 41. We disagreed, in part, because, "[b]y exerting that level of control over Morales's participation in the meeting, the district attorney's statement was objectively likely to chill employees from exercising protected rights." *Id*. at 43. In reaching that result, we focused on the *nature* of the county's conduct, an analysis that did not turn on whether the district attorney's actions were known to anyone beyond the employee at whom they were directed (even though, in that case, the union representative was not subjectively chilled from continuing protected activity).

On remand, ERB must apply the test for an "in" claim; that is, ERB must determine "whether, objectively viewed, the action that the employer took *under the particular circumstances* would chill union members generally in their exercise of protected rights." *Portland Assn. Teachers*, 171 Or App at 624 (emphasis added). Specifically, ERB must evaluate the "particular circumstances" and determine whether, in light of those circumstances, the discipline imposed would have the natural and probable effect of deterring Morales or other employees in the exercise of protected activity.

As should be clear, that question is not one that can be answered solely by reference to the text of the email. Rather, the standard requires an assessment of the circumstances in which it was sent, including the following: (1) Morales was, as he had been doing for weeks, engaging in advocacy that involved repeated challenges to Dooley's role in the investigations in which he was serving as a union representative; (2) those communications were heated and contentious; (3) a few weeks before Morales sent this email, he sent several other emails harshly criticizing Dooley's actions in the investigation and suggesting that those actions impaired the Association's ability to effectively represent its membership; and (4) at the time he sent this email, he was waiting for what he believed was an inordinately long time for the result of a disciplinary investigation involving Dooley.

Because ERB's resolution of the "in" claim failed to apply the appropriate legal test and, thus, failed to connect the facts to its legal conclusion under that test, it lacked substantial reason. Accordingly, we remand for the agency to correct the deficiency. *See Fuller*, 299 Or App at 414 (agency order that lacks substantial reason "requires us to reverse and remand for the agency to correct the deficiency").

Reversed and remanded.